## KEENAN v. THE MISSOURI STATE MUTUAL INSURANCE COMPANY ; AND RYDER v. THE SAME.

1. INSTRUCTIONS: FACTS. The court should not, in its instruction to the jury, assume as true any fact in controversey and material to the issue.

2. AGENCY: LIMITED AUTHORITY. The limited authority of an agent will not control the rights of third persons to whom the principal has so acted as to induce them to assume that the agent was vested with more general, or unlimited powers.

3. NOTICE TO INSURANCE COMPANY. Notice to an insurance company, which is a foreign corporation, may be given to a resident agent.

4. ERRONEOUS INSTRUCTION. An instruction which is erroneous in part may be refused entire by the court.

5. AGENCY: NOTICE. The failure of a special agent to communicate to his principal information which it would be his duty to give if he was vested with a more general authority, will not prejudice the rights of third parties who have been induced by the conduct of the principal to regard him as a general agent; but the principal will be charged with knowledge only of the facts which are communicated to the agent as such, and not by mere rumors and general conversation.

6. FORFEITURE OF A POLICY OF INSURANCE. It would seem, that the occurence of matters which, by the express terms of a policy of insurance issued by a mutual insurance company, operated as forfeiture of the policy, would discharge the insured from any liability on his premium notes on account of any loss occurring after such forfeiture.

7. SAME: WAIVER. The terms of a policy issued by a mutual insurance company provided that any appropriation of the premises insured to

JUNE TERM, 1861. 127

Keenan v. The Mo. State Mutual Ins. Co.; and Snyder v. The Same.

uses hazardous, or extra hazardous, during the continuance of the policy, should annul the policy "so long as the same shall be so used." It was held, that acts of the company subsequent to a breach of the condition, with full knowledge thereof, which were inconsistent with the hypothesis that they relied upon such breach, would operate as a waiver of the forfeiture.

8. CONDITION PRECEDENT: WAIVER. The conditions of a policy of insurance provided, that in cases of loss or damage by fire, the insured should, as soon as possible thereafter, deliver to the company a particular account and notice of the loss, verified by oath or affirmation. It was held:

1. That mere silence, or what was equivelent to silence, on the part of the company, on receiving an insufficient account, did not amount to a waiver.

2. That silence as to the actual defect, and conduct which would lead the insured to believe either that the objection to the account was based upon another ground, or that the account was sufficient, would operate as a waiver.

*Appeal from Dubuque City Court.*

SATURDAY, JUNE 22.

IN their principal features these cases are alike. On the 13th of December 1856, the company insured the building of the "Odd Fellows' Hall Association," for six years, which building was afterwards, on the 27th of May, 1859, entirely destroyed by fire. The plaintiffs in each of these cases obtained judgments against said association, and notice of garnishment, under proper process, was served on the Insurance Company. On the coming in of the answer of the garnishee in each case, certain issues were joined, which under the instructions of the court were submitted to a jury. Verdicts and judgments for plaintiffs.

*Cooley, Blatchley & Adams*, for the appellant.

I. The giving of notice and the making of preliminary proofs of the loss, according to the terms of the policy, are conditions precedent to the right of action, and should be

alleged and strictly proved. *Columbus Insurance Company* v. *Lawrence*, 2 Pet. 25 ; 2 Greenl. Ev. § 406; Parson's Mer. Law 535 ; *Saint Louis Insurance Company* v. *Kyle*, 11 Mo. 278. Silence *alone*, as to defects in such preliminary proofs and notice, is not a waiver of such defects.   1 Cush. 257 ; 16 Wend. 401 ; 25 Ib. 379 ; 4 Zabr. 447.

II. Knowledge of the existence of the theater acquired by the agent of the company, but not from a party in interest, nor while engaged in the business of his agency, was not binding on the company.   *Sykes* v. *The Perry County Mutual Fire Insurance Company*, 35 Penn. 79 ; Story's Agency § 140 *et seq.*; Ang. & Ames on Corp. § 307; *Hood* v. *Fahnestock*, 8 Watts 489 ; *Bracken* v. *Miller*, 4 Watts & S. 102.

III. The collection of assessments on the premium notes for losses which occurred after forfeiture, even with knowledge, does not constitute a waiver of the forfeiture.   *Gardner et al., & Piscataquis Mutual Fire Insurance Company* v. *Goodall*, 35 N. H. 328; *New England Mutual Fire Insurance Company* v. *Belknap et al.*, 9 Cush. 140 ; *Neely* v. *Onondaga County Mutual Fire Insurance Company*, 7 Hill 49 ; 1 Phill. Ins. 491, § 904 ; *Boynton* v. *Clinton and Essex Mutual Insurance Company*, 16 Barb. 254.

*O'Neal* and *Harvey* for the appellees.

I. The delivery of the preliminary account and notice of the loss may be waived by the Insurance Company.   Parson's Mer. L. 536, and the cases cited in Notes 3–5; *Heath* v. *The Franklin Insurance Company*, 1 Cush 257; 6 Ib. 342, 440 ; 16 Wend. 401; 25 Ib. 379 ; 4 Zabr. 447 ; *Farmers Insurance Company* v. *Crandall*, 33 Ala. 9.

II. The company was bound by notice to the agent. He is presumed to have the authority usually granted to agents in the same business ; and when the principal holds the agent out as having more authority than he really has, he is bound

by the acts of such agent to the extent of his *apparent* authority. *Pickering* v. *Busk*, 15 East 38; 4 Zabr. 447; 1 Parson's Cont. ch. 3, § 1.

III. Notice to a resident agent of a foreign Insurance Company is as binding as if made upon an officer of the company. Laws of 1857, p. 207, § 9; Ang. & A. on Corp. § 305 and the cases there cited; *Schenck* v. *The Mercer Mutual Insurance Company*, 4 Zabr. 453; 2 Hill 452; *Danville Bridge Company* v. *Pomroy & Co.*, 15 Penn. S. R. 151–162; 5 Hill 101–105.

IV. Knowledge of the agent, in the absence of express notice, will bind the principal. *The Bank of the United States* v. *Davis*, 2 Hill 45 2, 3 Ib. 262; 19 Ver. 411, 425; *Louisiana Bank* v. *Senecal*, 13 Louis. O. S. 525 (marg).

V. In the absence of an express agreement, the forfeiture of the policy operates to discharge the insured in a Mutual Insurance Company from liability on his premium notes for losses subsequently occurring. *Wilson* v. *Trumbull Mutual Insurance Company*, 19 Penn. S. R. 372; *Frost* v. *The Saratoga Mutual Insurance Company*, 5 Denio 154; *Lynn* v. *Burgoyne*, 13 B. Monr. 400.

WRIGHT, J.—The garnishee's answer admits the execution of the policy and the entire destruction of the building by fire. Liability thereon is sought to be avoided, however, by reason of certain things permitted and allowed by the insured before the destruction, and other matters omitted since that time. Under the first head, it is set up that the building was used for a theater, thus increasing the risk beyond and in a manner not contemplated by the policy. To this part of the answer it is replied, that the company knew that a portion of the building was used for a theater; that the insurers granted permission, by an indorsement of the policy, to thus use it, and, after knowledge of such use, ratified and affirmed the contract. Under the second head it is insisted that no full account of the loss was not given as re-

quired by the terms of the policy. The reply insists, that such account was given, or if not, that it was waived. Upon the issues thus joined, as well as some others not material to be now referred to, the parties went to trial. Instructions covering the various points relied upon by the parties respectively were asked; some given, others refused; and it is upon alleged errors in the giving and refusing of these that appellant relies for the most part for a reversal of these causes.

And first, it is insisted that the court erred in refusing this instruction: "E. M. Bartholow (an agent of the company,) not having acquired his knowledge that a theater was in use in the building, as agent, the Insurance Company is not bound by it." In support of this refusal, we think appellees well respond, that it assumed as true a question of fact that it was alone the province of the jury to determine. Whether he acquired his knowledge as agent, or otherwise, that is, whether it was brought to his knowledge and attention as such agent, that the building was thus used in violation of the terms of the policy, in such a sense as to bind the company, was one of the matters of fact contested by the parties; and to assume that he did *not* thus acquire his knowledge, would be to take from the jury its determination. If the proposition had been stated hypothetically, it would have presented a very different question. In the form asked, however, we think the instruction was properly refused.

It is next assigned, that the court erred in modifying the following instruction asked by defendant: "If Bartholow had no authority to make or cancel the contract of insurance, his knowledge that the policy was forfeited would not be knowledge of the company." To which the court added: "Unless the company held Bartholow out as having that authority." No specific objection is pointed out to this modi-

JUNE TERM, 1861.                131

Keenan v. The Mo. State Mutual Ins. Co.; and Snyder v. The Same.

fication, in argument, and we can see none. Though, as between the principal and agent, the powers of the agent may be limited, it still frequently occurs that his powers are not thus limited when the rights of third persons intervene, if the principal has so acted as to induce such third persons to act upon the assumption of more extended or unlimited powers. And this instruction as modified does no more than enunciate this plain rule. Whether the company did thus hold their agent out, was a question of fact submitted to the jury.

The refusal of the following instruction is, in the third place, assigned for error : " To bind the Insurance Company, the notice (referring to notice of the misappropriation,) should be actual and should be given to an officer of the Insurance Company, for the purpose of binding it, and to an officer who had authority to act upon it. Mere rumor or knowledge acquired by an officer after the insurance has been made, and while he is engaged in other business will not bind the Insurance Company." If it be granted that this instruction was correct in its reference to the character of notice to be given; that is, actual as contradistinguished from mere rumor; the objection would still remain that it ignores a notice to the *agent* and only recognizes as binding, actual notice to some *officer* of the company. The defendant is a foreign corporation, and to say that notice to a resident agent would not be good and binding upon the company, would be in conflict with the spirit of the statute and rules of the common law governing the rights, duties and responsibilities of principal and agent. Acts of 1857, p. 207, section 9. A portion of the instruction being erroneous therefore, as asked, the court was justified in refusing it entirely. *Fifield* v. *Adams*, 3 Iowa 487.

Exceptions were also taken to the modification of the following instructions : " If the association forfeited their

policy, they did so in their own wrong, and could not by such wrong acquire a right. They could not, therefore, acquire the right to have the notice of the forfeiture communicated by Bartholow to the Insurance Company." Modification by the court: "But it would be the duty of Bartholow to communicate such notice to the defendant, if he was held out by them as their general and fully authorized agent." We confess to some difficulty in understanding this instruction as modified. Briefly stated, the instruction as asked, is this: "By his own wrong, a party can not acquire a right, and if the policy in this case was forfeited by the association, they could thereby acquire no right to have notice of such forfeiture given to the company." This is plain enough, thus far, but when it is followed up by the *non sequitur*, that it would be the agent's duty to thus communicate a notice, to which the association had no right, upon the hypothesis of forfeiture, if he was held out by the company as their general and fully authorized agent, there is, to say the least of it, confusion. Bartholow's authority in the premises, had no sort of connection, legally or logically, with the right of the association to have notice given of the forfeiture, nor to any rights acquired by them on account of the failure to give notice of such forfeiture; if such supposed right resulted from such supposed wrong. If, however, the modification was not intended to have immediate connection with the instruction, but to enunciate the doctrine, that if the company held him out as an agent possessing full and general powers, then it was his duty to act, so far as the rights of the association were concerned, and that by his failure to act, the assured would not be prejudiced, though as a matter of fact, his powers were limited and special (the association having no knowledge thereof,) then it is not objectionable. But even then it must be understood that the knowledge which he acquired, and by which the company

would be bound, must have been communicated to him as such agent and not by mere rumors and talk upon the street corners.

The following instructions were asked and given : "In Mutual Insurance Companies all the insured are members, and all the members are insured. If the policy becomes void, the person insured is no longer bound on his premium notes, for any losses sustained after the vacation of the policy, but would be bound to pay all losses sustained prior to the invalidation of the policy." And again : "If assessments for losses were made on the premium notes of the Odd Fellows' Hall, Association, and such losses occurred after the building insured in this policy was appropriated for a purpose and occupancy which forfeited the policy; if you find from the evidence that there was any such appropriation and forfeiture, and such assessments were made and collected by the company, with a full knowledge of the forfeiture, such a state of facts, if proved, would justify you in finding that such forfeiture had been waived."

The question of practical importance arises on the last instruction. For if there was no forfeiture, then the liability upon the premium note, of course, continued. If there was a forfeiture and no waiver, then the general principle, which governs the liability of the assured after the policy becomes void, is not material to our present inquiry. The two instructions, however, were given in the same connection, and will be thus considered.

Considered as an equitable question it would seem that if there was a forfeiture to the extent of releasing the insurers from liability on the policy, the insured should no longer be held on their premium notes. The burdens and benefits should go together. True, the rule is, that one party cannot by his own act, in violating his contract, release himself from liability. If, however, the parties have by the terms of their

agreement fixed the consequences of a forfeiture on a violation of it, this becomes to them the law of their contract, and by it they are to be governed. Thus, if it is stipulated that the doing of an act shall result in putting an end to the contract, aside from the question of damages for the breach, as it would cease to have effect for the benefit of one, so it would for the other. The person claiming the forfeiture and insisting upon his non-liability as a consequence thereof, should not be allowed to claim benefits under it as a continuing and subsisting contract.

The consequences provided for the appropriation of the premises to uses hazardous or extra hazardous, during the continuance of the policy, as fixed by the conditions annexed, are that the policy should cease to be of effect " so long as the same shall be so used." The language used is not that " this policy shall *thenceforth* be void and of no effect," as in *Smith* v. *Saratoga Company*, 3 Hill 508; but only so long as the building is so used. When the hazardous trade or occupation ceased, therefore, the policy had its original force, and this without any act on the part of the company. If the effect of the condition or forfeiture had been to render the policy absolutely void and of no effect, than according to the case in 3 Hill *supra*, this would have made it a dead body, to which nothing short of a new creation could have imparted vitality. And yet that case even *is not sustained* by the authorities.

It being then possible to revive the policy notwithstanding such use, without any act of the company, why may not this use be recognized and the forfeiture therefrom be waived by the company. And if an act has been done by the company with full knowledge of the forfeiture, which is utterly inconsistent with the hypothesis that they relied upon the breach alleged, and which act would naturally and justly influence the conduct of the other party, would it not be unconscionable and grossly inequitable to permit them now to insist upon a different position. Having voluntarily as-

sumed their ground there is no reason why they should not be held to it.   Thus, if with full knowledge of the forfeiture they nevertheless collected assessments for losses occurring after they ought not, "in good conscience and honest dealing," be permitted to gainsay the admission implied from the act.   At least, would a jury be justified in concluding from such assessment and collection that the forfeiture had been waived?

The case of *Frost* v. *Saratoga Company*, 5 Denio 154, is in point, and fully sustains these instructions.   That of *Smith* v. *Same*, 3 Hill 508, really recognizes no different rule.   And see 12 Verm.

II.   As already stated, another part of the defense related to the failure of the association to render a particular account of the loss as required by the "conditions of insurance" annexed to the policy.   It is not claimed that this condition was strictly complied with, but that something was done, and that a full compliance was waived by the insurance company. And upon this subject the court instructed:   1st.   "While it is one of the conditions of the policy, that in case of loss or damage by fire, the assured shall, as soon thereafter as possible, deliver a particular account and notice of the loss, verified by the oath or affirmation, this must be done before the Insurance Company is liable ; but a mere failure to verify such account or notice, when the same is received in silence by the company, without objection or notice of the want of the affidavit on the part of the company, and when no request is made for further particulars, the jury would be justified in finding that the company had waived such requirement."   2d.   (After reciting the conditions of the policy as to notice and proof of loss as before,) it is said: "This must be complied with before the Insurance Company is liable on the policy, and mere silence on the part of the company is not a waiver of such proof of loss."   3d.   The following instruction was refused :   "Mere failure on the

136      SUPREME COURT OF IOWA,

Keenan v. The Mo. State Mutual Ins. Co.; and Snyder v. The Same.

part of the company to notify the insured that the *notice of preliminary* proof was insufficient, would not amount to a waiver."

It is not denied that the making of this preliminary proof was necessary to entitle plaintiffs to recover. Ordinarily the compliance with such condition is a condition precedent, and its performance must be alleged and proved. (2 Greenl. § 406.) This, like any other condition, may be waived, however, and the company be liable. (*Columbia Insurance Company* v. *Lawrence*, 2 Pet. 53.) What amounts to a waiver, or whether there has been a waiver in the particular case, is the question of difficulty, and that which has given rise to much discussion in elementary works, and in the reported cases. Without entering into this discussion, we unite in the opinion, that the second instruction above quoted, was correct, and that the first was erroneous. Mere silence, we do not think, can be construed into a waiver of the proof required. Silence, with something more, may be sufficient; that is, the jury might be justified from silence, and something else, in inferring a waiver, but not from silence alone. And by something else, we mean more than the doing, or not doing, of those things, which after all, amount to mere silence. To instruct that mere silence is not sufficient, and at the same time hold, that the failure to do something, which failure is nothing more than silence, will be sufficient, would at least tend to mislead and confuse the jury. If A makes no objection to the sufficiency of a written instrument handed him, and makes no request for further particulars, he is after all, practically and in legal contemplation, only silent, and if silence would not estop him, neither would the omission to object and demand further particulars. Of course, if the law made it incumbent on him to object or demand more, and for his failure to do so, made him liable, the case would be different. Or, if it appeared that with his silence,

JUNE TERM, 1861.        137

Keenan v. The Mo. State Mutual Ins. Co.; and Snyder v. The Same.

he so acted as to induce the opposite party to believe that he accepted the instrument, and thus led him to conclude that there was a waiver, though none was intended, he might be bound. Where, however, the contract of the parties and the law require that a condition precedent shall be performed, if it is attempted, but not performed, the failure of the party to request more, or object to the sufficiency, is but silence, and mere silence is not a waiver.

We have said that silence and something more might be sufficient. Thus, if after the notice was given, being defective, the company, by its agents or proper officers, proceeded to take charge of the premises with the view of self-protection, or if the refusal to pay was put upon other grounds at the time of giving the notice, than defects therein—these and many other acts might justify the jury in concluding that there was a waiver. In the case from 2 Peters, *supra*, however, the company after notice, proceeded to examine the title to the premises to ascertain if the assured had an insurable interest, and it was held that this did not amount to a waiver. That case, however, turned upon circumstances peculiar to it, and really has not much application to the point now under discussion. The same case was again before the Supreme Court (10 Pet. 507,) but as to this question, it was disposed of on another ground.

In *Schenck* v. *Insurance Company*, 4 Zab. 447, the notice was insufficient, and the company examined the claim and refused to pay *exclusively on another ground*. This was held to amount to a waiver. The syllabus in *Heath & Another* v. *Franklin Insurance Company*, 1 Cush. 257, sustains the instruction now under consideration, the language of the two, being substantially the same. A reference to the opinion, however, shows that the company, while they made no objection to the notice, put their denial of liability upon other grounds, and this was held a waiver. And in *Ætna*

*Insurance Company* v. *Tyler*, 16 Wend. 401, (referred to by DEWEY, J., in 1 Cush., *supra*,) the same rule is recognized. *Clark* v. *New England Company*, 6 Cush. 342, and *Underhill* v. *Agawan Company*, Ib. 440, were decided upon the same ground, the insurers having declined, after defective notice, to pay the loss for other reasons. *McMasters & Another* v. *The Mutual Company*, 25 Wend. 379, is to the same effect.

Thus it will be found that something more than mere silence is necessary to amount to a waiver. We have found no case that goes so far as the instruction in this case, and do not think it can be sustained either upon principle or authority.

The instruction numbered above as third, and refused, was properly so, upon the ground that it refers to "the notice of preliminary proof," something which could not properly, and did not, figure in the case. There may be some mistake in the record, but there is nothiug as far as we can see in the policy or conditions annexed, which made it the duty of the assured to give "notice of preliminary proof," nor does it appear that any such "notice" was attempted to be given. There could, therefore, be no objection to that which was not given, and as a consequence no waiver from a failure to thus object.

We have thus examined all, except one, of the many errors assigned in these cases. The errors pointed out apply to the first, and not to the second case. In the second, no instruction was asked upon the subject of the effect of silence in waiving the want of a particular account of the loss.

In both cases, however, it is insisted that the verdict was contrary to the evidence. We confess to some doubt, upon this subject, and yet we are not satisfied that it is our duty to interfere. Very many questions of fact were submitted. Many witnesses were examined, and there was some conflict.

The tribunal, selected by the law for determining such questions, deciding as to the credibility of witnesses, and reconciling any conflict in their testimony, has acted after a protracted and full trial, and with their action in this respect we do not feel disposed to interfere.

The first cause is reversed and the second affirmed.