Gray v. Blum.

---

George R. Gray, receiver of the United States Credit System Company, appellant,

*v.*

Alfred Blum and Lucas Toch, respondents.

1. A receiver of a credit system insurance company stands in the place of the company as to the allowance or disallowance of the claims against it, and when he acquires knowledge of loss whilst the company was solvent, and does some act that implies that he will not insist upon proper and correct proofs of loss being made, he cannot thereafter set up this omission against an allowance of the claims for *pro rata* distribution.

2. Where the notice and proof of loss are defective, and the insured negotiates as to proper notice and proof, and the proofs are offered and unobjected to by the receiver, and the insured is led to believe, by some act of the receiver, that no defect exists, or that an existing defect is immaterial, the defect is waived and the claim must be allowed.

---

On an appeal from a decree advised by Vice-Chancellor Reed.

For the appellant, *Messrs. Hayes & Lambert.*

For the respondents, *Mr. Charles E. Hill.*

The opinion of the court was delivered by

LIPPINCOTT, J.

On the 15th day of June, 1894, the United States Credit System Company issued a certificate of guarantee to the respondents, by which the credit system company agreed to pay to them such sum not exceeding $5,000, according to the conditions of the certificate, on the total gross sales and shipments of merchandise which they might make between March 15th, 1894, and March 14th, 1895, to their customers, as they might actually lose on such shipments to legally-ascertained insolvent debtors, of whom the United States Credit System Company had been notified on its notice of failure blanks, with all questions thereon answered, within ten days after information to them of such insolvency. The other provisions of the certificate need not be referred to, as they are immaterial to the decision of this case.

The respondents, during the period of the insurance, had made sales and shipments of merchandise to the Saloon Fixture Company of the city of Chicago, to the amount of $2,414.46. On this sum there was a credit to the fixture company of the sum of $198.96, leaving a balance due of $2,215.50. The Saloon Fixture Company failed on August 13th, 1894, with this balance still due the respondents, and on the same day they received notice of such failure. According to the terms of the certificate, the respondents' own loss would be $1,000, and therefore the insurance held good only for $1,215.50, an allowance of which is sought against the receiver in the distribution of the assets of the United States Credit System Company.

The respondents received notice of the insolvency of their debtor, the Saloon Fixture Company, on August 13th, 1894. Mr. Blum testifies that on that day he mailed to the United States Credit System Company notice of this insolvency, along with statement of the loss sustained. Some time between that

date and August 24th, the United States Credit System Company failed, and on August 23d a temporary receiver of that concern was appointed. The claim was presented to the receiver, and on November 15th, 1894, he disallowed the same, on the ground that, according to the conditions of the certificate, notice of loss had not been sent to the company within the ten days. From that disallowance an appeal was taken to the court of chancery. In that court an order was made that the claim be allowed by the receiver, as duly proved, and entitled to a *pro rata* payment with the other debts of the United States Credit System Company, with costs of appeal.

The learned vice-chancellor founded this order upon the finding of the fact that the notice of insolvency, with statement of loss, was on August 13th, 1894, mailed to the company. Whether the notice mailed was a sufficient proof of loss under the conditions of the certificate, is exceedingly doubtful. The certificate required that the notice should be on the failure blanks of the company, with the questions thereon answered. This letter and statement was not on such failure blanks, and neither the letter nor statement contained all the items of information required. There exists much doubt also whether the letter and statement, such as it was, was ever mailed or received by the company.

But the conclusion reached is that the order of the court of chancery should be affirmed and the claim allowed by the receiver for a *pro rata* distribution, upon the ground that the receiver has waived the want of presentation to the company, during its insolvency, of the formal proof of loss, as required by the certificate.

The facts, as they appear to be in the case, are that at the time of the information of the failure of the Saloon Fixture Company to the respondents, on August 13th, 1894, the United States Credit System Company was on the eve of insolvency itself. The fact also may be taken, as found by the vice-chancellor, that some sort of notice and statement of loss was sent by the respondents to the credit system company on that day, and, at the same time, the respondents issued an attachment for their

claim, so that it was in a state of litigation. The exact date of actual failure of the credit system company does not appear. The respondents say that it was about August 13th, 1894. The receiver was appointed August 23d, 1894, just ten days after the information of the failure of the Saloon Fixture Company had been received by the respondents. There is also evidence that the respondents after notice that their proof of loss was informally sent, on August 24th, 1894, to the company and to the receiver, a formal statement of loss on the failure blanks, in accordance with the condition of the certificate. The secretary of the credit system company, who remained in the service of the receiver, claims no such letter and statement was received, but the fact is, that on September 5th, 1894, the respondents mailed to the receiver a letter enclosing the account of the respondents against the Saloon Fixture Company. This was noted by the secretary as having been received on September 7th, 1894, and so marked on the notice. They were notified by the receiver that their proof of loss was informal, apparently by postal card from the receiver. Again, on September 26th, 1894, they enclosed a certified copy of their statement of loss to the receiver. On September 28th, 1894, this statement was returned because it was wrongly made out, and directions were given the respondents by the receiver that they must make out and verify their claim under oath, stating the amount they claimed the Saloon Fixture Company owed them. In accordance with these directions the respondents sent to the receiver a statement under oath of their claim against the Saloon Fixture Company. On October 17th, 1894, the receiver again informed them that their affidavit was faulty, and directed them to send in the claim against the Saloon Fixture Company under oath. On October 18th, 1894, such statement was sent to the receiver. These facts fully appear by the correspondence between the receiver and the respondents. On November 15th, 1894, the receiver disallowed the claim upon the ground that the respondents never filed any notice of loss with the United States Credit System Company whilst it was solvent, and that no notice was filed with him until September 7th, 1894, and claiming that the condition of

the policy which required such notice within ten days after information of failure of the debtor had not been complied with, and that, therefore, the respondents had no claim for an excess loss against the credit system company.

We think it was entirely too late for the receiver to disallow this claim. Under the facts and circumstances in proof in this matter, and which were before the receiver, there was a clear waiver of this condition of the certificate. It is manifest here that the deficient proofs were taken by the receiver and explicit instructions given by him to the respondents for their correction.

Under the circumstances, the respondents were led to believe that the receiver had dispensed with this condition of the contract, and upon the faith of that they went on dealing with him. It was very easy, on the 5th or 7th of September, to have said to the respondents that their claim could not be entertained, and that this condition would be insisted upon, but the continued negotiations for the correction of the proofs of loss reveal a state of facts which is only consistent with a waiver of that condition. As was said in *City Bank of Louisiana* v. *First National Bank, 6 Eng. & Ir. App. 360,* the law will not allow one to take up the inconsistent position at once "approbating and reprobating," and in this view it is quite immaterial what the real intention of the receiver may have been, for he will be estopped from denying the fact of waiver. His conduct raised a belief in the mind of the respondents that he intended to waive one of the terms of the contract, and it would be quite immaterial what his intention may have been. *Roby* v. *American Central Insurance Co., 120 N. Y. 510 ; Armstrong* v. *Agricultural Insurance Co., 130 N. Y. 560 ; Ronald* v. *Mutual Reserve Fund Loan Association, 132 N. Y. 378 ; Everitt* v. *London &c. Insurance Co., 142 Pa. St. 332 ; Insurance Company* v. *Wolff, 95 U. S. 326, 333.*

In this, as in kindred cases, the receiver stands in the place of the company as to the allowance or disallowance of claims of this character under the statute which confers this power and imposes this duty upon him. At least no question of this character was made in the argument, and therefore it is presented the same as if the act of waiver, if any existed, was that of a

duly-authorized agent or officer having full power to waive this condition of the certificate.

The waiver of notice of loss, or defects in proof of loss, or of the due time of their presentation, are common instances of the application of the general doctrine, and instances are so numerous as to make citation of authorities tedious.

When the insurer acquires knowledge of loss and does some act that implies he will not insist upon notice being given, he cannot thereafter set up the omission to notify, or at least his conduct is evidence of waiver. *Weed* v. *Hamburg-Bremen Fire Insurance Co., 133 N. Y. 394.*

Where, on death blanks, forms for proofs are given, and the insured advises and negotiates as to proper proof (*Travelers' Insurance Co.* v. *Edwards, 122 U. S. 457*), it has been held that when the proofs offered are unobjected to, and the insurer leads the insured, by some overt act, to believe no defect exists, or that an existing defect is immaterial, the defect is waived. *Keenan* v. *Missouri State Mutual Insurance Co., 12 Iowa 126.*

It has also been held that a waiver may be inferred when the insurer is the cause of the delay of the insured in presenting proofs of loss, as where the proofs are sent back by the insurer for correction, and again sent back after the time has expired. *German Fire Insurance Co.* v. *Grunert, 112 Ill. 68; Travelers' Insurance Co.* v. *Edwards, 122 U. S. 457.* The insurer furnishing blanks to the insured after the time has been considered evidence of waiver. *Goodwin* v. *Massachusetts Mutual Life Insurance Co., 73 N. Y. 480.*

Instances of waiver are so numerous that it can well be stated that each case depends upon its own circumstances for a determination of the question.

Upon the ground of implied waiver, I vote to affirm the order of the court of chancery directing the allowance of this claim by the receiver.