MEDEARIS & BOWEN v. THE ANCHOR MUTUAL FIRE
INSURANCE COMPANY, Appellant.

INSURANCE. An insurance company is liable upon a policy of fire
insurance forwarded to it by its agent to be indorsed with its consent to a transfer of the policy, when an additional premium was
demanded and paid to the agent, although the following day the
property was destroyed by fire, and before an indorsement by the
company.

ESTOPPEL. Where an insurer had written its agent that it could not
approve an assignment of a policy to the purchaser of the insured
property, unless he agreed to an advanced rate, and instructed him
to secure a new note for the rate as advanced, return same, together
with policy, when, if found satisfactory, consent to the assignment
of the policy would be indorsed thereon, and the agent had procured
the advanced rate and followed such instructions, it is estopped
to take advantage of the provisions of a policy rendering it void
where the legal title to the property was changed, and that an
agent could not waive any of the conditions of the policy.

EVIDENCE: *Principal and agent.* Letters in reference to the transfer of a policy of fire insurance written by an agent to the company, which notify it of the facts and form the basis of its communications to him, are admissible in evidence.

*Same.* Testimony given by the insured in an action brought upon a fire insurance policy, that after a conversation with the company's agent he believed that he was insured in defendant company, is harmless error where the liability is fixed by an estoppel, resting upon undisputed testimony.

*Same.* Evidence of a conversation between the insured and an agent who acted as the medium of communication between the insurance company and the insured, is admissible, although he was only a soliciting agent with authority to organize certain counties and look after local agents.

**Instructions.** An instruction is not objectionable for collating the facts instead of charging separately on each point and stating the rule of law applicable thereto, when the method adopted is calculated to better bring the case within the comprehension of the jury.

*Appeal from Wapello District Court.*—HON. F. W. EICHELBERGER, Judge.

FRIDAY, DECEMBER 17, 1897.

ACTION on a policy of fire insurance. Judgment for plaintiffs, and the defendant appealed.— *Affirmed.*

*A. W. Enoch* and *Sullivan & Sullivan* for appellant.

*McNett & Tisdale* for appellee.

GRANGER, J.—I. On the sixth day of August, 1893, the defendant company issued to Medearis & Myers a policy of insurance for the sum of eight hundred dollars, on what is known as "Cascade Laundry." While the policy was in force, and about May 18, 1894, the personnel of the firm was changed by the substitution of Bowen for Myers, and the ownership of the property correspondingly changed. At this time the company

held the note of Medearis & Myers for the insurance held by the firm. On the nineteenth of May, 1894, Medearis, in the interest of the firm of Medearis & Bowen, went to one T. H. Corrick, who was a special agent of the company, to obtain the consent of the company to change the ownership of the property to the new firm, and presented to Corrick the policy for that purpose. On the back of the policy were forms, in blank, for the indorsement of the company, and for the assignment of the policy from one firm or person to another. Corrick filled in, in writing, the blank for the assignment by Medearis & Myers to Medearis & Bowen, and Medearis signed the name of Medearis & Myers thereto, so as to complete the transaction between the firms. Corrick also filled in the blank for the consent of the company, and inclosed the policy, with a new note from Medearis & Bowen, to the company at Creston, Iowa, with the following letter, omitting unimportant parts: (1) "Herewith I hand you policy No. 6,478, Medearis & Myers, asking for transfer of same to parties whose names appear on the new note inclosed. The risk is all right, but I think I would suggest to you that the rate on this was too low, and you would have to ask for a raise of fifty cents, and I think I can secure it." (2) "I told the assured this morning I thought you would ask for 2 per cent. or cancel policy. You use your own judgment in this matter, and I will act accordingly." Under date of May 31, 1894, Corrick received the following letter in answer to his of May nineteenth: "Creston, Iowa, May 31st, 1894. T. H. Corrick, S. A., Ottumwa, Iowa—Dear Sir: Inclosed herein we hand you policy 6,478, Medearis & Myers, and would advise you that we cannot consent to assignment of this policy unless parties will agree to an advance in rate of 1-2 per cent. per annum. You will please secure new note made on the basis of

advanced rate, return same, together with the policy, when, if found satisfactory, consent to the assignment of said policy will be endorsed thereon, and the original note executed by Medearis & Myers canceled and returned to them. Yours, truly, Geo. J. Delmege, Secy." On receipt of this letter Corrick went to Medearis with the policy and surrendered the note before given, for some seventy-two or seventy-six dollars, and took a new one for ninety-six dollars to meet the requirement for additional premium, and collected in cash two dollars and seventy cents, which was indorsed on the note. The policy and new note were then sent to the company at Creston the same day, June 2, 1894, by Corrick, with the following letter: "Ottumwa, Iowa, 6-2-1894. Geo. J. Delmege, Secy., Creston, Iowa—Dear Sir: Herewith I hand you policy No. 6,478, with rate increased to two per cent., as per your instructions of recent date. I thought I could get the raise. Please charge me with $2.70, balance due on present year's payment. Please send me some more large envelopes, unaddressed. With best wishes, I am, very respectfully, T. H. Corrick." On the next day, Sunday, a fire swept away a part of the city of Ottumwa, including the laundry in question. On the same day Corrick wrote the company of the fire and that the laundry was burned, and advising the company to give the loss attention. On the next day, Monday, June 4, 1894, the company canceled the policy by a writing on the face thereof, and on the same day returned the policy and note, and the note given originally by Medearis & Myers, to Corrick, with information that the attention of the president of the company had been called to the matter, and that, as steam laundries were prohibited by the company, it would not consent to the assignment, and Corrick was directed to return the notes to the parties with a check for two dollars, in payment of pro

rata cash premium paid by them. This action is to recover on the policy

II. The following is a provision of the policy: "It is hereby agreed that no agent or employe, or any other person or persons, other than the regular managing officer or officers of this corporation, can in any manner waive, alter, or change any or either of the conditions of this contract. This contract is made and accepted subject to the above conditions." It contained the further provision that if the property be sold, or any change made in the legal title or possession, the policy should be void. In view of the facts of the case, and these provisions of the policy, the right of recovery is made to depend on a waiver of such provisions, or that the company was estopped to assert them. The court instructed the jury that the secretary of the company had power to waive the conditions of the policy, and also to consent in writing to the change of title to the property. It then gave the case to the jury on he question of waiver or estoppel, in the following instruction: "If you find from the evidence that on or about May 19, 1894, Medearis, a member of the plaintiff firm, took the policy in question to Corrick, the special agent of defendant, at Ottumwa, Iowa, and informed him that the plaintiffs had become the owners of the insured property, and requested a transfer of the policy from the firm of Medearis & Myers over to the plaintiffs; that Corrick then filled out the blank form of transfer printed on the back of the policy from the firm of Medearis & Myers to the plaintiff, and that Medearis signed the name of the plaintiffs thereto, and left the policy with said Corrick, to be by him sent to the defendant's home office at Creston for consideration and indorsement, if the transfer was approved; that a premium note was also made out and signed for the

plaintiffs and left with said Corrick; that said Cor-
rick either on said day, or on or about the twenty-sixth
day of May, 1894, mailed to the defendant said policy
and note, and with it the letter of Corrick dated May
19, 1894 (Exhibit I), in evidence, and that the letter,
policy, and note reached the defendant, and its secre-
tary, Delmege, by due course of mail, at Creston; that
said secretary wrote and sent to the said Corrick his
letter of date May 31, 1894 (Exhibit X), in evidence,
inclosing the policy, and that they were received by
Corrick on June 1 or 2, 1894; that the said Corrick then
went to the plaintiffs and took from them the new note
for ninety-six dollars, in evidence, and collected from
them two dollars and seventy cents as cash premium,
and credited the same upon said new note; that on the
same day, to-wit, June 2, 1894, Corrick mailed said
policy and new note at the postoffice at Ottumwa,
addressed to the defendant at Creston, together with his
letter dated June 2, 1894 (Exhibit V), in evidence;
that the fire and destruction of plaintiffs' property took
place on June 3, 1894; that plaintiffs from May 19, 1894,
until after the fire received no notice from defendant,
or any of its agents, that defendant would not accept
the risk, or would not carry the insurance for them,
or would or had canceled the policy, or would treat it
as forfeited by reason of the transfer or change of pos-
session of the insured property, or that, notwithstand-
ing the new note given and the cash paid, the policy
would not be considered in force until the defendant or
its secretary had actually made and signed the written
consent upon the policy,—then you would be justified
in finding a waiver or estoppel, and in holding defend-
ant upon the policy." This instruction is made the
basis of an assignment, and its consideration first will
set at rest some of the points argued, as they are essen-
tially involved therein.

It is appellant's idea that on the nineteenth of May, when the change in the firm was made, the condition of the policy was violated and the contract of insurance at an end. Not necessarily so. It is to be borne in mind that the negotiations between the new firm and the company were not with a view to new insurance, but with a view to such a consent on the part of the company as would continue the old policy. The policy, with the assignment on the back of it, was in the hands of the secretary, and also a note of the transferee, to take the place of the note of the old firm, and continue the insurance for the new firm; and it is clearly manifest that the company did not at that time intend to cancel the policy or treat it as void, until further negotiations were attempted, with a view to a higher rate of premium; and the secretary, in his letter of May 31, 1894, directed the agent, Corrick, to secure a new note on the basis of the advanced rate, and return the same, together with the policy, when, if found satisfactory, consent to the assignment of the policy would be endorsed thereon, and the original note executed by Medearis & Myers canceled and returned to them. Importance is attached by appellant to the words in the letter, "if found satisfactory," and it is thought that they save to the company a right, for any reason, to refuse its consent. The letter, in the light of facts that may be noticed, will not bear that construction. The company then knew all the facts to govern its conduct, so far as the policy was concerned, except as to whether it could get the increased rate; and a fair construction of the letter is that, if a satisfactory note was returned, it would indorse its assent on that policy, for which purpose it was to be returned. It is not to be doubted that had the note first made by Medearis & Bowen, that accompanied the policy, been for the amount of the last note, the consent would have been at once indorsed.

The delay was only for the added premium of twenty dollars. The company, when it did conclude to treat the policy as void, left no doubt of its purpose, and leaves to us unmistakable evidence of its method of procedure. With the policy at hand, it indorsed the fact thereon, and returned what it had received, barring, perhaps, as is claimed by appellee, the two dollars and seventy cents. Before that it was keeping what it had and seeking the added premium, for no other purpose than the continuation of the policy. We can construe the letter of the secretary to Corrick in no other way than that it authorized him to secure another note, which if given, and was satisfactory, the policy should be indorsed with the consent of the company. If so, the company is now estopped to take advantage of the provisions of the policy as to the indorsement thereon. No question whatever is made as to the sufficiency of the note. The only reason given for the cancellation is that the property insured was a laundry, which fact was, at all times known. With this view, we think there is no reason for complaint as to the legal proposition involved in the instruction. There is a criticism that the court should have instructed on each point in a way asked by appellant, instead of collating the facts as they appear in the instruction, and stating the rule of law applicable. We think the method adopted by the court the better one, and well calculated to bring the case to the comprehension of the jury.

III There is a complaint that the court erred in admitting in evidence the conversation between Medearis and Corrick, because Corrick was only a soliciting agent, with authority to look after local agents, and organize certain counties, etc. As to this particular question, we do not think it important to determine the scope of his authority as agent. That he was an agent there is no doubt, and

in this particular transaction he reported to and received instructions from, the company, and his authority, in so far as he acted, was fully understood and recognized by the company. He was the company's medium of communication with the assured, so that his acts became those of the company, as much as if he were a general officer. The facts showing this situation appear in the former divisions of the opinion.

IV. The court permitted Medearis and Bowen to testify that, after the talk with Corrick on May 19, they believed they were insured in the defendant company. The ruling is thought to be error. If so, it is without prejudice. The really essential facts to justify a recovery on the basis of estoppel are so few, and appear so conclusively, that a right of recovery was not a doubtful question under the law as we have determined it. The verdict really has support on the documentary proof and the testimony of defendant's witnesses.

V. It is thought that the letter of Corrick to the company, under date of May 19, 1894, being the first letter on the subject, was incompetent, and should not have been admitted. Nothing more need be said than that it was what notified the company of what was wanted, and was the basis of its communication and authority to Corrick to act, and, together with the company's letter in answer, shows its understanding and purpose in the negotiation. The same claim is made as to the final letter of Corrick to the company, in which he inclosed the policy and the note, with the added premium, which completed the agreement. There can be no doubt of the admissibility of such evidence. At the close of the testimony there was a motion by defendant for a verdict in its favor, which the court denied, and error is assigned on the

ruling.   The assignment presents only such questions as we have considered, and the ruling was without error.   The judgment is AFFIRMED.