Elmer S. Kesler, Appellee, v. The Farmers' Mutual Fire and Lightning Ins. Ass'n., Appellant.

**Mutual insurance:** consent to the removal of property: *Ultra vires.*
1  A county mutual insurance association authorized to do business in

the county in which its principal place of business is located, and in contiguous counties, has power to consent to the removal of property insured within its territory to a point outside of such territory, without subjecting itself to the rule of *ultra vires*.

Same: EVIDENCE. Proof that the secretary of a mutual insurance association knew of the removal of property from the territory in which it was insured, that he promised to furnish a written statement of consent to such removal, and that its board of directors subsequently levied and collected assessments with knowledge of such removal, was sufficient to establish consent of the association so as to hold it liable for the loss in the new location, notwithstanding a by-law providing that it should not be liable for the loss of property thus removed without written consent.

Same: WAIVER. Any provision in a contract of insurance restricting the use of the property insured, or its location, is for the benefit of the insurer, and may be waived by it. Thus it may waive a by-law exempting the association from liability for loss of property removed from its original location.

Same: POWER OF AGENTS. By provision of statute any officer of an association is its agent and has authority to transact business for it within the scope of his employment: So that an association is bound by the consent of its secretary to the removal of property from the county in which it was insured, although such consent was not in writing and endorsed upon the policy as required by a by-law.

Same: ACTION FOR LOSS: VENUE. Where an insurance association consented to the removal of insured property to another county, made and collected assessments on the policy while the property was so situated, an action for its loss was properly brought in that county where the loss occurred, as provided by statute.

*Appeal from Hardin District Court.*—HON. CHAS. E. ALBROOK, Judge.

FRIDAY, JUNE 6, 1913.

ACTION upon a policy of insurance against loss by fire. Decree for plaintiff. Defendant appeals.—*Affirmed.*

*Williams & Huff,* and *James W. Morse,* for appellant.

· ·*W. W. White,* and *Lundy, Wood & Baskerville,* for appellee.

GAYNOR, J.—On the 7th day of March, 1907, defendant issued to the plaintiff its policy of insurance against loss or damage by fire to certain property, then owned by the plaintiff, among which were certain household goods. On or about the 19th day of February, 1910, the household goods so insured were destroyed by fire. At the time the policy was issued, the goods were in the possession of the plaintiff on the southeast quarter of section 24, Lake township, in Emmet county. On the 15th day of December, 1907, the goods were removed by the plaintiff to Hardin county, and were in Hardin county, Iowa, at the time they were destroyed by fire. The goods destroyed were insured for the sum of $200, and it is admitted that the goods, at the time they were destroyed, were worth considerably more than that sum.

The plaintiff brings this action to recover the amount of his loss. The defendant resists recovery and insists that it is not liable for the loss of the property while off the premises described in the application, and avers that section 2 of the by-laws of said defendant association provides that defendant shall not be liable for loss or damage by fire when the property insured is off the premises described in the application and policy; that, at the time the insurance policy was issued, the property was located as hereinbefore stated; that thereafter, in violation of the terms of the contract, plaintiff moved the household goods to Hardin county, and therefore the policy became null and void and of no effect; that the articles of incorporation provide that the association shall embrace in its territory the county of Emmet, in the state of Iowa, and that it was only authorized to do business in the county of Emmet, and had no authority, therefore, to do business outside the county of Emmet, or to authorize the re-

moval of property insured by it outside the territory in which it was authorized to do business. Defendant says that it is a county mutual insurance association organized under section 1160 of the Code of 1873, that by the by-laws of said association it is provided that, whenever personal property insured by it shall be removed from the *building* in which it was originally insured (if the hazard is not thereby increased), consent to such removal may be obtained from the secretary of the company, to be indorsed on the policy, and the insurance will remain valid if such consent is obtained; and defendant further says that the plaintiff removed the property without obtaining from the secretary the consent aforesaid. The plaintiff, replying to defendant's claim, say that the removal of the property in question from Emmet county to Hardin county was with the consent and advice of the defendant company; that the defendant company, by its secretary, had full knowledge of the removal of the goods, and orally consented thereto, and orally promised to make the proper entry on his books consenting to said removal, and to furnish plaintiff with a written statement of such consent, and make proper transfers on his books duly authorizing such removal; that, after the removal, and with full-knowledge on the part of the company that the goods had been removed, the defendant continued to levy its assessments upon and against plaintiff on account of such insurance on said household goods, and that all the assessments so levied were paid by the plaintiff, and received by the defendant, with full knowledge of the facts aforesaid; that, by reason of the facts aforesaid, defendant is now estopped from denying liability.

It appears from the evidence in this cause that the policy in question was issued on the 7th day of March, 1907; that, at the time the policy was issued, the property insured was situated on the southeast quarter of section 24, Lake township, Emmet county, and the plaintiff in his application for the insurance so located the property. The policy issued

upon the application of the plaintiff, among other things, stated that the policy was issued for a consideration, paid by the assured, to indemnify him against loss or damage by fire, to the property described in the application situated as therein stated; and that the association undertakes, promises, and agrees to make good unto the assured all such loss or damage to the property as shall happen by fire, for five years from the date of the issuance of the policy, and the association expressly reserves the right to cancel the policy, or any part thereof, upon good and sufficient reason.

The provisions of the articles of incorporation called to our attention by the abstract, and relied upon by the defendant are:

Article 1. The corporate name of this association shall be the Farmers' Mutual Fire and Lightning Association, to embrace in its territory, the county of Emmet, state of Iowa.

Art. 2. The principal place of business shall be at Estherville, Emmet county, Iowa.

Art. 3. The object of this association is to mutually insure its members against loss or damage by fire . . . in such manner as shall be set forth in its by-laws, and the membership of this association shall be those who are insured in the same.

The by-laws of the association, in existence at the time the policy was issued and the loss occurred, so far as material to this controversy, are:

Sec. 2. This association shall not be liable for loss or damage on live stock or any other personal property by fire when off the premises.

Sec. 13. Whenever personal property insured in this association shall be removed from the *building* in which it was originally insured, if the hazard is not thereby increased, consent to such removal may be obtained from the secretary, to be indorsed on the policy, and the policy and insurance will remain valid after such consent is obtained.

By the terms of the policy, the articles of incorporation and by-laws were made part of the contract of insurance, and the plaintiff was therefore charged with knowledge of such articles and by-laws as were then in force.

It will be noticed that this company was organized under section 1160 of the Code of 1873, as amended by Supplement Code 1907, which, so far as this controversy is concerned, reads as follows:

1759-a.  Any number of persons may, without regard to the provisions of the preceding chapter, enter into contracts with each other for the insurance from loss or damage by fire, . . . but such associations of persons shall in no case insure any property not owned by one of their own number, except such school and church property as may be situated within the territory in which they do business.   .  .  .   Associations organizing for the purpose of transacting business under the provisions of this chapter shall incorporate under the provisions of chapter 1, title 9 of the Code.

1759-b.  Any association incorporated under the laws of this state for the purpose of furnishing insurance as provided for in this chapter, doing business only within the county in which is situated the town or city in its articles of incorporation as its principal place of business, or the counties contiguous thereto, shall, for the purposes of this chapter, be deemed a county mutual assessment association; all other associations operating hereunder shall, for the purposes of this chapter, be deemed state mutual assessment associations.

It will be noticed that there is no provision in the Code, or in the articles of incorporation, or in the by-laws, or in the policy itself, prohibiting the removal of property insured in one of these associations to another county than that in which it was insured, and in which the company had a right to do business, except the provision found in sections of the by-laws, hereinbefore set out.

Section 13 of the by-laws refers to a removal only from the *building* in which it was originally insured, when consent thereto is given by the secretary.  It will be noticed

further that section 2, read in connection with section 13, provides that the association will not be liable for loss or damage to property when off the premises on which it was at the time the insurance was issued, but that it may be removed from the *building* in which it was insured (if the hazard is thereby not increased), if the secretary of the company consents to such removal. Section 2 voids the policy if the property is removed from the premises. Section 13 provides that it may be removed from the *building* in which it is situated, providing consent of the secretary is obtained.

Waiving the question as to whether or not a company organized under chapter 5, title 9, of the Code, can insure property located outside the territory, in which it is authorized to do ·business, to wit, in the county in which its principal place of business is situated and counties contiguous thereto, it appears that the property in question was within the limits of its territory at the time the insurance was furnished and the policy was issued. Therefore the first question to be determined is whether or not, after the issuance of the policy so rightfully issued, the company could consent to the removal of any portion of the property outside the territory, so limited. That is, while it may have no power to insure property outside of its territory, may it ·consent to the removal of property insured within its territory, to a point outside the territory in which it is authorized to do business, without being subject to the rule of *ultra vires?* This question we think must be answered in the affirmative. See 10 Cyc. 1156, where it is held: ''The great weight of judicial authority seems to be to· the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and the action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it.'' See, also, *Beach v. Wakefield,* 107 Iowa, 567; *Humphrey v. Patrons Merc.*

1. MUTUAL IN-
SURANCE: con-
sent to removal
of property:
*ultra vires.*

*Ass'n,* 50 Iowa, 607; *Butterworth v. Kritzer Milling Co.,*
115 Mich. 1, (72 N. W. 990); *International Trust Co., v.
Davis Milling Co.,* 70 N. H., 118 (46 Atl. 1054); *Chapman v.
Iron-Clad Rheostat Co.,* 62 N. J. Law, 497 (41 Atl. 690).

The next question then is: Did the company consent to
the removal of the property from the premises on which it
was at the time it was insured to a point out-
side the territory in which it was authorized
to do business?

2. SAME: evi-
dence.

Mrs. Kesler, wife of the plaintiff, testified:

I was living in Emmet county at the time the policy in
question was issued. I knew the secretary of the company.
We lived about six miles from him. We lived in the country.
He lived in town. We moved from Emmet county to Hardin
county in December, 1907. Brought with us the household
goods, team, beds and bedding, wearing apparel, household
furniture, sewing machine, printed books, pictures and picture
frames. When we came to Hardin county, we lived first with
my father and mother. We had the property with us, which
was destroyed by fire, and at the time it was destroyed it was
east of Iowa Falls in Hardin county, in a stone house. After
we moved to Hardin county, I saw the secretary of the com-
pany in his office in Armstrong, in August, 1908. I went
there to pay Mr. Gaarde, the secretary, lodge dues, and to
see about transferring this policy. I told him we had brought
with us the household goods and the team. That was the team
covered by the policy. I told him we had moved to Hardin
county, but did not tell where in Hardin county we had moved.
That is, did not tell him the farm on which we had moved. He
said he would see about transferring the policy. I told him
that I wanted to transfer in the policy some household goods.
He said he would see to it.

The plaintiff testified:

I reside in Iowa Falls. Moved from Emmet county to
Hardin county, December 15, 1907. We brought with us the
property mentioned by my wife. I went back to Emmet

county the next week. When I was there, I saw the secretary of the company in his office. I talked with him about having moved our household goods to Hardin county. I told him where I had moved to. I told him we had moved to Iowa Falls. Did not mention the particular place. He said he would see about transferring the policy; that he was busy with his books, but would attend to it later. I asked him if he wouldn't give me a transfer to Iowa Falls. He said that he was busy and would attend to it later. I never received any transfer from him. I received notice of the assessment made in January, 1908, by mail. It was directed to Iowa Falls. I received notice of assessments for the years 1909 and 1910, addressed to me at Iowa Falls. We remained with my father-in-law at Iowa Falls until February, 1908. We then moved the property to the place where it was burned. I told him he was to send my assessment notices to Iowa Falls, and he said he would.

H. H. Gaarde testified for the plaintiff as follows:

I am secretary of the defendant company and reside at Armstrong. Have been such secretary since 1894. I solicited the insurance written in the policy in this suit. There was an assessment levied on this policy in January, 1908. This assessment was levied at our directors' meeting. It was paid by the plaintiff on the 21st day of February, 1908. There was also an assessment levied on this policy at the directors' meeting in January, 1909, and a notice sent out thereafter. The assessment for 1908 was one and one-half mills on the total amount insured, $2,550, and in 1909, one mill. There was an assessment levied in January, 1910, which was paid on the 14th day of March, 1910. The policy was issued for $2,550. The plaintiff paid on the assessment of 1908, one and one-half mills, or $3.83. In 1909, one mill, $2.55. In 1910, $6.38. The assessment for that year being two and one-half mills; all of which were paid by the plaintiff and retained by the defendant. I received a letter from the plaintiff, in relation to the loss that he claimed he had, reading as follows: 'Feb. 21, 1910. H. A. Gaarde, Armtsrong, Ia.—Dear Sir: I write you in regard to insurance policy. We lost everything by fire Saturday night at 10 o'clock, Feb. 19, 1910. We have nothing to show amount of insurance. Would like to know

what you can do for us.  Let us know at once.  [Signed] Elmer· Kesler.'  When I received this letter, I knew what property he referred to.  I also received the following letter from him:  'March 1, 1910.  Dear Sir:—Received your letter in regard to insurance policy.  I can't see why you have been accepting the assessments also.  I asked you a year ago to change those papers over.  As long as the company has taken the money for assessments, they ought to do something to settle the loss.  See what they will do without further trouble. [Signed by the plaintiff.]'  I answered the first letter as follows:  'Feb. 22, 1910.  Our policy does not cover any of your property at Iowa Falls.  We don't write insurance outside of Emmet. county,  There is nothing that I can do for you. You should have protected yourself with insurance down there.  [Signed by the defendant company] Gaarde, ·Secretary.'  I answered the second letter as follows: 'March 2, 1910.  I have to assess the policies as shown by the books, a man can cancel any part of his insurance at any time, but how am I to know what changes people want unless they make their wants known.  It is only when they tell me what they want that I can inform them as to whether we can make the changes wanted or not.  We cannot change your policy to cover property at Iowa Falls, and I would have told you this plainly if you had asked me, but you can cancel out your personal property any time.  We can do nothing for you.'

Gaarde, testifying for the defendant, denied having any conversation with the plaintiff, or with his wife, in regard to the removal of the household goods insured, at any time after the same was insured, and before the fire.  "Neither of them told me that they were moving their goods from Emmet county to Hardin county.  Neither of them ever said a word about it."

From the foregoing, we. are confirmed in the idea that the secretary of the defendant company knew that the goods in controversy were removed by the plaintiff to Hardin county prior to January, 1908, and we are brought to this conclusion, not only because the plaintiff so testifies on this point, but also by reason of the fact that the notices of assessments made in January, 1908, and subsequently, were.

sent direct to the plaintiff at Iowa Falls; that this transaction being of peculiar interest to the plaintiff and but a single instance of that kind, he would be more likely to remember what was said and done in respect to the matter than would the secretary whose interests were not involved, and who undoubtedly had many to deal with in the discharge of his duty, and for the further reason that the secretary testifies that, upon receiving the letter dated February 21, 1910, hereinbefore set out, he knew the property referred to in the letter, although not mentioned in the letter, and for the further reason that the company, upon learning that the plaintiff had moved to Iowa Falls, made no inquiry touching the disposition of the property covered by the policy, so far as shown by the record, at the time the assessments were made, hereinbefore referred to.

We are also led to believe, and find the fact to be, that the company, through its secretary actually consented to the transfer of the property, and that the company itself consented thereto, through its board of directors, by assessing the property in its new location, with knowledge of the fact that it had been removed from the county of Emmet. The company was charged with notice and knowledge of the facts communicated to it, through its secretary, and with this knowledge it had the right to cancel the policy or any part thereof, as provided in this policy, and, not having canceled, it elected to carry the property in its new location, and the assessments made under the policy covered, not only this property in controversy, but other property named in the policy which was at the same time removed to Hardin county.

The case of *Lutz v. Anchor Fire Insurance Co.*, 120 Iowa, 136, was one in which the policy provided that, if the assured, after the date of the policy, obtained additional insurance upon the building without consent of the company, it would render the policy void, and that this consent, to be available, must be indorsed upon the policy, and provided further that no person other than the secretary, or his as-

sistant, could, in any way or manner, waive any of the conditions of the contract. It appears that the assured, after the date of the policy, obtained additional insurance upon the building, without its written consent. It appears that thereafter the assured wrote to the company asking consent thereto, inclosing with the letter requesting consent the policy; that the policy was retained without responding to the letter of request until after the fire. The court, speaking through Judge Weaver, said:

The policy provided that the taking of additional insurance would render the policy void, unless written consent was indorsed thereon, and that no person other than the secretary or assistant secretary could waive any of the provisions of the policy, and that waiver must be in writing on or attached to the policy. It is true that no such expressed or written waiver was made, or was ever indorsed upon or attached to the policy. The defendant had the undoubted right, if it so desired, to insist upon the strict letter of its contract, and treat the policy as void from the moment the additional insurance was procured. On the other hand, it was not within the realm of legal possibilities that it should divest itself of all capacity to waive any contract right it possessed, or should so limit the manner and form in which a waiver may be expressed that such limitation itself might not be waived. This, we think, is substantially the holding of this court in *Ruthven v. American Fire Insurance Co.*, 102 Iowa, 550. If, then, we assume, as the jury evidently found, that notice of the additional insurance was given and request for written consent thereto made, and thereafter defendant continued to treat the policy as in force, and gave the plaintiff reasonable ground to believe that it did not intend to insist upon the strict terms of the contract in this respect, then the question of waiver became a proper one to submit to the jury. It appears, without dispute, that the premium on the policy had been paid from year to year, and that at the time of the alleged notice of additional insurance no part of such premium was past due; that, within sixteen days after the notice to the company of additional insurance, the company notified the assured that the next installment of premium would fall due and requested prompt payment to prevent the suspension or avoidance of the policy;

that, after the loss, the company notified the assured of the maturity of this installment, saying to him that, if not paid within thirty days, his policy would be suspended.  Both of these notices were subscribed by the secretary.  It seems very clear that if the company was made aware of the act of the assured avoiding the policy, and with such knowledge proposed to insist upon the strict letter of its contract, it should have acted consistently with that purpose.  It could not treat the policy as void for the purpose of defense, and, at the same time, treat it as valid for the purpose of earning and collecting further premiums.  Having received the notice, it was within its power to ignore the failure of the assured to observe the precise terms of the policy, and to continue to treat the contract of insurance as still of binding force and effect.

As holding to the same doctrine, see *Phenix Ins. Co., v. Hart,* 149 Ill. 513, (36 N. E. 993) ; *Denver Fire Ins. Co., v. McClelland,* 9 Colo. 11, (9 Pac. 771, 59 Am. Rep. 134).  See, further, *Kimball v. Insurance Co.,* 70 Iowa, 513 ; *Medearis et al. v. Insurance Co.,* 104 Iowa, 88 ; *Antes et al. v. Insurance Co.,* 84 Iowa, 355 ; *King v. Insurance Co.,* 72 Iowa, 310 ; *Williams v. Insurance Co.,* 50 Iowa, 561 ; *Jordan v. Insurance Co.,* 64 Iowa, 216 ; *Viele v. Insurance Co.,* 26 Iowa, 9 ; *Lewis v. Insurance Co.,* 26 Iowa, 94.  *Keenan v. Insurance Co.,* 12 Iowa, 126, in which it is held that the acts of the company, subsequent to a breach of the conditions, with full knowledge thereof, which were inconsistent with the hypothesis that they relied upon such breach, would operate as a waiver of the forfeiture.  See, also, *Padrnos v. Insurance Co.,* 142 Iowa, 199, in which this language is used:

  After the defendant had knowledge both through its soliciting agent and adjuster of facts which avoid the policy at the time of the assignment making it absolutely void and of no effect in plaintiff's hands from the beginning, it accepted and retained both the premium note and the cash installment, and has at no time offered to return the same.  As the policy was utterly void in plaintiff's hands from the beginning, if defendant's contentions are correct, we think it estopped itself

from relying upon the invalidity of the policy by retaining the cash fee and the premium note.

In the case now before us, the company had a right to insure the property of the plaintiff as it did. The policy of insurance was a binding contract between the plaintiff and the defendant, upon which both parties had a right to rely. The property was within the territory in which the plaintiff had a right to do business at the time the policy was issued. There is no provision in the policy, the articles of incorporation, or by-laws, restricting the property to a location within that territory, except the provision found in section 2 of the by-laws, providing that the association will not be liable for loss by fire when the property insured is off the premises described in the application and policy. The parties had a right to make this provision in their contract, and, when made, it became binding upon both, yet it was clearly made for the benefit of the company, and could therefore be waived by the company. Any limitation made in a policy of insurance, which serves as a restriction upon the use of the property insured, or upon its location, which may affect the hazard insured against, may be waived by the party for whose benefit it is made.

**3. SAME: waiver.**

It is next contended and argued that the defendant company could not be bound by a notice to its secretary of the removal of the property, nor by any consent or agreement on the part of the secretary that the property could be removed outside the county of Emmet, for the reason that the consent was not in writing, nor indorsed on the policy. This contention is not tenable. See section 1750 of the Code; *Lutz v. Anchor Fire Ins. Co., supra; O'Leary Bros. v. Insurance Co.,* 100 Iowa, 390. Even if the secretary did not have authority to make an agreement authorizing the removal of the property or to consent thereto, he received notice to the effect that the property was removed, and thereafter the company, with knowledge of that fact,

**4. SAME: power of agents.**

made the assessments hereinbefore referred to, and received payment upon the very property now in controversy.

It is next contended that the court in Hardin county, where this suit was tried, had no jurisdiction, and that the motion to change the venue to Emmet county should have been sustained; but we think that when the defendant consented to the removal of this property to Hardin county, and accepted and received premiums on the property while so situated, and made and collected assessments on the property, the venue was at the place where the loss occurred, as provided in section 3499 of the Code of 1897.

5. Same: action for loss: venue.

It will be noticed that the company was not confined in its business to the county in which its principal place of business was situated, but it had a right to do business and to insure property in other counties contiguous thereto. Surely, then, if loss occurred in any of these counties contiguous to Emmet county, the suit could be brought in the county in which the loss occurred; and, by parity of reasoning, it would appear that, if they consented to the removal of the property to another county than that in which the business was carried on, and loss occurred there, suit might be maintained, under the provision of 3499 in that county.

There are other matters argued, but we do not deem them of sufficient importance to give them special attention, excepting in so far as they have been disposed of in what has been heretofore said.

We find no error in the record, and the cause is *Affirmed*.