AUGUST ENGVALL, Administrator of the Estate of C. A. CARLSON, Deceased; v. DES MOINES CITY RAILWAY COMPANY, Appellant.

**Street railroads:** OPERATION OF CARS: NEGLIGENCE: EVIDENCE. In
1 the operation of a street car it is the duty of the motorman in the exercise of due care to keep a constant lookout, not only ahead of his car but also on either side, that he may discover persons upon the track or approaching it in dangerous proximity with his car; and where a street is so obstructed that he can not by keeping a constant lookout discover those who may be in a dangerous position, he must use his sense of hearing to avoid collision, and must keep his car under complete control until the obstruction is passed.

In the instant case the evidence is held to show actionable negligence of the motorman in colliding with a hose wagon responding to a fire call, causing the death of plaintiff's intestate.

**Same:** INSTRUCTION. Under the allegation that the motorman did
2 not heed the gong of the hose wagon as he approached the crossing at which the accident occurred, and evidence that he did

not hear the approaching wagon, the court properly submitted the issue of negligence in failing to hear the wagon; the term "heed" in the connection used meaning "hear."

**Instructions:** WHEN NOT MISLEADING. Although one paragraph of the instructions is manifestly wrong and clearly in conflict with the correct rule when considered separately, yet if the correct rule is elsewhere clearly stated, so that if from the instructions as a whole a jury of average intelligence would not have misunderstood the true rule, the erroneous paragraph will not be considered as misleading.

**Same:** WHEN NOT INVADING PROVINCE OF JURY. Although an instruction that failure of the motorman to exercise the care as charged in the petition was negligence, if standing alone would be erroneous, still when read with other instructions in the same connection, to the effect that the question of negligence as charged was for the jury to determine, it was not prejudicial as invading the province of the jury.

**Same:** GROUPING OF FACTS. The grouping of certain facts and directing the jury that it may consider the same in connection with all the other proven facts in determining the issue is not necessarily objectionable, as referring to specific parts of the evidence.

**Same:** SUBMISSION OF SPECIAL FINDINGS. Refusal to submit special findings not ultimate in their nature but inhering in the general verdict, and which can not be answered without danger of confusion, is proper.

**Excessive damages.** In this action for the death of a foreman forty-six years of age, earning $1,000 a year, and who had accumulated $2,000, a verdict for $8250 is held excessive and is reduced to $6,000.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

WEDNESDAY, MAY 12, 1909.

REHEARING DENIED FRIDAY, JANUARY 21, 1910.

SUIT to recover damages for the death of C. A. Carlson. Plaintiff had judgment for $8,250 and the defendant appeals.—*Affirmed* on condition.

*Guernsey, Parker & Miller,* for appellant.

*Thomas A. Cheshire,* for appellee.

SHERWIN, J.—The plaintiff's intestate was a hoseman connected with the Des Moines fire department, and he was killed in a collision between a hose wagon and one of the defendant's street cars. The accident occurred at the intersection of Walnut Street and Sixth Avenue a little after nine o'clock at night in January, 1907. The hose wagon belonged at a fire station located on East Walnut Street, and at the time of the accident it was responding to a fire call from a point west of Sixth Avenue and was moving rapidly along Walnut Street close to the north side thereof. The defendant has tracks running east and west on Walnut Street and north and south on Sixth Avenue, and a general waiting room from which all of its city cars radiate on Sixth avenue one block south of the place of the collision. The car that collided with the hose wagon was a north-bound Sixth Avenue car. It had left the waiting station but a few moments before, and, after making two or three stops before reaching the Walnut Street track, it went on and struck the hose wagon near the north curb line of Walnut Street. Among the acts of negligence alleged in the petition were these: "That the defendant was negligent in that its motorman, I. M. Bonar, did not pay any heed or attention to the ringing of the gong on the said hose wagon as it approached Sixth Avenue; that the defendant was further negligent in that its motorman did not see the hose wagon and the horses attached thereto, as they approached Sixth Avenue, before his vision was obstructed by the car of the defendant, which was standing just east of Sixth Avenue; that the defendant was further negligent in that its said motorman did not look for the approach of the said hose wagon and horses thereto attached, or other vehicles, before moving his car northward

from behind the car of defendant standing just east of Sixth Avenue."

In the instructions given to the jury the negligence complained of was stated in the following language: "That the defendant's motorman on car No. 188 was neg-
ligent in not hearing or seeing, in time to avoid the accident, the hose wagon as it approached Sixth Avenue and Walnut Street when he was causing said car to be moved into Walnut Street to the place where it collided with the hose wagon of the fire department. That the defendant's said motorman was negligent in not looking to the eastward on Walnut Street before causing the said car to go northward on Sixth Avenue so as to be unable to avoid the collision." The two acts of negligence stated above were the only ones submitted to the jury, and the appellant strongly urges that the evidence is wholly insufficient to warrant the finding that the motorman was negligent in either respect named, or that the acts charged as negligence were the proximate cause of the injury complained of, and that the court therefore erred in overruling its motion for a directed verdict and in overruling its motion for a new trial. It is said that there is no evidence tending to show that the motorman was negligent in not looking to the east on Walnut Street before moving his car so far north on Sixth Avenue as to be unable to avoid the collision, or tending to show that his failure to look was the proximate cause of the accident. The evidence clearly shows, and in fact it is conceded, that the street intersection where the accident occurred is one of the busiest intersections and railway crossings in the city of Des Moines, and that at the time in question general travel on both Walnut Street and Sixth Avenue was further congested at that point by obstructions in both streets.

It is clearly the duty of the driver or motorman of a street car, in the exercise of reasonable care under the

circumstances, to keep a constant lookout, not only ahead of his car, but also to the right and left thereof, so that he may discover persons upon the track and persons approaching it in dangerous proximity to the approaching car. *Doran v. Railroad,* 117 Iowa, 442; *Barry v. Railroad,* 119 Iowa, 62; *Doherty v. Railway Co.,* 137 Iowa, 358; 2 Thompson, Neg., sections 1382, 1476, 1477, and cases cited. And where the conditions are such that the motorman can not by keeping a constant lookout discover the near approach of persons, he should use his sense of hearing to avoid collisions with or injury to them. As the car in question went north from the waiting station, it stopped at the switch point, which was about sixty feet south of the Walnut Street track, and again when it had reached the south curb line of Walnut Street. At this time, and when the accident happened, one of the defendant's cars was standing on the Walnut Street track with its rear end somewhere near the east line of Sixth Avenue, and the evidence shows that this car somewhat obstructed the motorman's view of Walnut Street east of the crossing. He had an unobstructed view of Walnut Street west and Sixth Avenue north when he stopped at the curb line on Walnut, and, his view to the east being partly obstructed by the car in question, it was his duty, in the exercise of ordinary care, to keep a sharp lookout to the east for persons or vehicles approaching from that direction, and, if his view was so far obstructed by the car standing on the Walnut Street track that he could not see the near approach of persons, it was his duty to keep his car under complete control until his view of the street was unobstructed. *Bremer v. St. Paul City R. Co.* (Minn.) 120 N. W. 382. The evidence shows that he did not look to the east, nor attempt to do so, until his attention was directed to the rapidly approaching hose wagon by a lady standing on the street. The streets were well lighted, and the hose wagon was readily seen and heard a distance

of two or more blocks away. Its gong was continuously sounded from the time it left the fire station until the accident happened, and the evidence tends strongly to show that it could be, and probably would have been, heard and seen by the motorman had he been exercising care for the approach of persons or vehicles on the east of his car. There is evidence tending to show that the motorman might have seen the hose wagon through the windows of the car standing on Walnut Street had he looked in that direction, and that a discovery of it even at that time would have enabled him to avoid the collision.

The appellant contends, also, that there is no evidence tending to show that the motorman was negligent in not hearing the approach of the hose wagon; but we do not concur in this view of the record. As we have already said, if the motorman's view to the east was completely obstructed by the standing car, it was his duty to exercise care to hear the signals of approaching persons or vehicles, and, if he failed in this respect, it would be negligence. He knew the dangerous character of the crossing, and that persons and vehicles of different kinds were liable to be passing east and west upon Walnut Street at any time, and from the condition of the street at that point he knew that the north part of it would be the most used. There were windows and a door in the vestibule of the car which he says he kept closed at the time in question. He also testified that he could not hear when the vestibule was closed. In view of this testimony and the condition existing at the time, we think there is evidence tending to show negligence in housing himself so that he did not hear what would otherwise have been plainly heard, namely, the gong and the approach of the hose wagon.

The appellant also says that the court erred in submitting to the jury the question whether the motorman was negligent in not hearing the approaching hose wagon in time to avoid the accident. The petition alleged that the

defendant was negligent in that its motorman, I. M. Bonar,

2. SAME: instruction. did not pay any heed or attention to the ringing of the gong on the hose wagon as it approached Sixth Avenue, and it is said that it is not a charge that the motorman was negligent in not hearing the gong, but is a charge that, having heard it, he paid no heed or attention thereto. There is merit in the criticism. But one of the accepted definitions of "hear" is to "give heed; listen; harken." Century Dict. And this, in connection with the fact that the evidence on the subject was to the effect that the motorman did not hear the approaching hose wagon, leads us to think the court very properly construed the word "heed" as meaning "hear."

In its sixth instruction the court told the jury that it was the duty of the defendant, in the operation of the car in question, "to exercise ordinary care to provide against such accidents as might result from the pru-

3. INSTRUCTIONS: when not misleading. dent use and operation thereof." The instruction is wrong. It is the imprudent operation of a car that creates liability; but in several of the other instructions given the court clearly, fully, and correctly defined the kind and degree of care required of the defendant, and we are of opinion that the jury was not misled by the use of the word "prudent" in the sixth instruction. It is so manifestly wrong and so clearly in conflict with the·rule elsewhere clearly and correctly stated that a jury of average intelligence would not misunderstand it. See *Smith v. Insurance Co.*, 115 Iowa, 217; *Flam v. Lee*, 116 Iowa, 289; *Schaefer v. Insurance Co.*, 133 Iowa, 205; *Brown v. Coal Co.*, 143 Iowa, 662.

In the same instruction this language was used, following that already quoted: "And the failure on his part to exercise such care, as charged by the plaintiff in his petition, would constitute negligence." This part of the instruction is said to have invaded the province of the jury.

If construed as it is by the appellant, it would undoubtedly do so, and standing alone, would be erroneous. *McBride v. Railway Co.*, 134 Iowa, 398; *Root v. Railway Co.*, 122 Iowa, 469. But if the specific language objected to be considered with the language immediately preceding it, it may fairly be said that the court told the jury that the failure to exercise ordinary care would constitute negligence and nothing more. If the language be given the meaning contended for by the appellant, we think it was not prejudicial because of the rest of the same instruction and other instructions given. The jury was first told in the sixth instruction that it was to determine whether the defendant was negligent as alleged in the petition, and, following the language objected to, the jury was repeatedly told, in effect, that the question of the defendant's negligence was for its determination. The instruction is too long for incorporation in this opinion, but a careful reading of it convinces us that the jury could not have misunderstood the language complained of or have been misled by it.

Another paragraph of the sixth instruction is criticised on the ground that it referred to specific parts of the evidence, but nowhere told the jury whether certain facts would indicate negligence and other facts indicate care. The facts were grouped to a certain extent in the instruction, and the jury was told that it might consider them with all the other facts and circumstances disclosed in evidence for the purpose of determining whether the motorman was or was not negligent. There is no merit in the criticism. *Medearis v. Insurance Co.*, 104 Iowa, 88.

Some complaint is made of the eleventh instruction given by the court relating to the damages, but we think it did fairly direct the jury to consider the earnings of the decedent at the time of his death.

The defendant requested a large number of instruc-

tions which were refused, and error is predicated on such refusal. The instructions given were very full and fairly covered all that was contained in the requests which might properly have been given. Special findings were asked: (1) As to the length of time the deceased would probably have lived had he not been killed when he was; (2) the probable aggregate net amount of his accumulations during the time; and (3) the present worth of the aggregate net amount of such accumulations. These special findings were not ultimate in their nature and necessarily inhered in the general verdict and could not well be answered without danger of confusion. In such cases it is not error to refuse them. *Thomas v. Schee,* 80 Iowa, 237; *Phoenix v. Lamb,* 29 Iowa, 352.

*6. SAME: submission of special findings.*

The verdict was for $8,250, and the trial court refused to disturb it. It is here claimed that it is excessive, and that the trial court erred in not setting it aside. At the time of his death, Carlson was forty-six years of age, with an expectancy of about twenty-four years. He was healthy and able to work, and was then earning and receiving $1,000 a year. He had accumulated property of the value of about $2,000. He had no source of income aside from his personal earnings. An allowance of $8,250 as the present worth of the loss to his estate for the estimated period of his life is equivalent to a finding that he would have accumulated and left to his estate had he lived about $20,000. During over one-half of his active business life he had accumulated but $2,000, and we think there is no warrant for finding that he would have accumulated $20,000 had he lived out his expectancy. His years of usefulness as a fireman could not in the very nature of things have followed his expectancy of life, and we can see no substantial basis for the amount awarded his estate.

*7. EXCESSIVE DAMAGES.*

If the plaintiff shall elect to file in this court a

remittitur of all in excess of $6,000 within thirty days from the filing thereof, the judgment for such amount will stand affirmed; otherwise it will be reversed. A motion to strike the appellant's argument because not in the form required by the rule was submitted with the case and is overruled. The argument does not comply with the rule, but the disregard thereof is not of so serious a nature as to require drastic treatment.—*Affirmed* on condition.