ELIZABETH BORTHWICK LORIMER, Executrix, Appellee, v. HUTCHINSON ICE CREAM COMPANY et al., Appellants.

No. 41778.

JUNE 20, 1933.

Comfort & Comfort, and F. J. Kennedy, for appellants.

D. R. Alexander and J. W. Morse, for appellee.

KINTZINGER, J.—Deceased was struck by an automobile owned by the Hutchinson Ice Cream Company and driven by Leo Sanders, its agent, while in the course of his employment, at or near the corner of Des Moines street and Seventh street in Estherville shortly after 6 p.m. No one saw the automobile strike deceased, but the impact was heard by several witnesses, and after the impact he was seen coming over the left front fender of the car, his body rolling off the left side like turning a somersault. The body lay about 30 or 40 feet south of the intersection of Des Moines and Seventh streets, and was about 7 feet behind the car when it stopped. There is a dispute between the litigants as to whether the deceased was struck while on the intersection or south of it.

Although the lights on defendant's car were lit, the driver failed to see the decedent before he was struck. His lights would disclose an object from 100 to 150 feet ahead of the car.

The business section of Estherville is built around a city park; Des Moines street runs east and west on the north side, and Seventh street runs north and south on the east side of the park, and intersects with Des Moines street at the northeast corner of the park.

The deceased left a barber shop shortly after 6 p. m. and was going home to change his clothes as he was going out to supper that night. He was last seen before the accident walking toward the northeast corner of the park on a paved sidewalk between a fountain in the center of the park and the northeast corner. His course was along the diagonal walk through the park to the northeast corner, where Seventh street and Des Moines street intersect.

After the impact the car was traveling south carrying the body on the car and while it was rolling off. The car ran about 12 feet while the body was seen rolling over it and about 14 feet after it left the car. The driver of the car didn't see the deceased until after the impact, and after deceased was going up over the left front side of the car. The left light of the car was bent back, and there was a dent in the hood, which were not there before. Some testimony shows that no horn or other warning was sounded before the impact. There were no cars parked on the west side of Seventh street at the time, and there was nothing on Seventh street to obstruct the driver's view. After being struck deceased was seen in the street bleeding at the mouth and ears, with a fracture at the base of his skull.

A witness said the crash sounded like a piece of tin being struck by a ball bat; some evidence showed the car was traveling about 15 to 25 miles an hour; the driver said he was going about 15 an hour when he struck deceased. The noise of the impact came from at or very near the crossing, and the body was carried on the car some distance before it fell.

The east side of Seventh street between Des Moines street and the block south was occupied by business property. The building at the southeast corner of Seventh and Des Moines streets was a funeral home, and the body was lying in front of it.

The driver said he struck Lorimer about 20 to 30 feet south of the intersection, but did not see him until after the impact. His lights were sufficient to see Lorimer after he came up over the left side of the car but he did not see him before.

The deceased was 69 years of age, and was earning $75 per month. The Carlisle life tables showed deceased had an expectancy of 8.33 years.

Among the grounds of negligence alleged and submitted to the jury were: (1) That the car was driven at an excessive rate of speed over an intersection. (2) That the driver crossed the intersection without keeping a proper lookout for pedestrians. (3) That he drove

the car without giving any warning or signal. (4) That the car was driven at such an excessive rate of speed that it could not be stopped within the assured clear distance ahead.

I. We are first confronted by two motions to strike two amendments to appellants' brief and argument and assignment of errors filed after appellee's brief and argument was filed.

Appellants assign twenty-six errors relied on for reversal in their brief and argument, in chief. Appellee filed her brief and argument in reply thereto. Thereafter appellants filed an "Amendment and Supplement to Appellant's Brief and Argument and Assignment of Errors", and later filed another amendment designated as "Amendment to Appellant's Brief and Argument."

■ Rule 30, paragraph 5, requires that appellant's brief and argument shall contain a statement showing "the errors relied upon for reversal". A note under this rule requires said errors to be *"set forth in clear, concise and definite language sufficiently full and specific,—to apprise the court of the ruling complained of, and the particular or particulars in which and for what reason it is claimed to be erroneous"*. The additional briefs and amendments were apparently filed to make more specific the errors relied upon for reversal and meet or obviate the points raised in appellee's brief and argument. This cannot be done after appellee has filed his brief and argument. Bodholdt v. Townsend, 208 Iowa 1350, 227 N. W. 404; Fisher v. McCarty, 197 Iowa 369, 195 N. W. 608; Floyd & Newland v. Serenado Mfg. Co., 196 Iowa 6, 193 N. W. 581; Dodge v. Grain Shippers Mutual Fire Insurance Assn., 176 Iowa 316, 157 N. W. 955; State v. Thomas, 173 Iowa 408, 155 N. W. 859; Blomgren v. City of Ottumwa, 209 Iowa 9, 227 N. W. 823, 824.

In the latter case we said:

"The appellant, in its reply brief, attempts to make specific the grounds relied upon for reversal. This statement in its reply brief is of no avail to the appellant. *The errors relied upon for reversal set out in appellant's original brief measure its full right of review."*

Another reason for holding that the errors assigned cannot be amended or added to in a reply brief is contained in the seventh paragraph of Rule 30, which provides that *"any error relied upon for reversal, not argued in the 'argument in chief,' shall be deemed to have been waived."* Duncan v. Rhomberg, 212 Iowa 389, 236 N. W. 638; Mennenga v. Mennen, 182 Iowa 1147-1156, 166 N. W. 486;

Powers v. Iowa Glue Co., 183 Iowa 1082–1088, 168 N. W. 326; Miller v. Swartzlender & Holman, 192 Iowa 153, 182 N. W. 651.

It is apparent from the foregoing cases and the latter provision in paragraph 7 that it was the purpose of Rule 30 to require all assignments of errors to be set out in the "Argument in Chief", and that all errors not argued therein shall be deemed to have been waived. In this case a large number of the errors relied on in appellants' "Argument in Chief" were not sufficiently specific to comply with Rule 30 and the additional assignments set out in two later amendments were not argued at all in the "Argument in Chief", and therefore, under paragraph 7 of the Rule 30, they are also deemed to have been waived. The appellee's motions to strike said amendments was submitted with the case and are hereby sustained.

II. Without setting out in detail the great number of the errors relied upon for reversal in appellants' original brief and argument, we find that errors Nos. 3, 5, 8, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25 of appellants' brief and argument do not comply with Rule 30 because they are either omnibus assignments, or show no specific grounds for reversal. Sweeping omnibus errors in blanket form, and errors which do not set out specific grounds for reversal, are not sufficient to present anything for our consideration. Reynolds & Heitsman v. Henry, 193 Iowa 164, 185 N. W. 67; Fisher v. McCarty, 197 Iowa 369, 195 N. W. 608; Harrington v. Southern Surety Co., 206 Iowa 925, 221 N. W. 577; Reynolds v. Chehak, 199 Iowa 561, 202 N. W. 268; In re Estate of Pauly, 174 Iowa 122, 156 N. W. 355; Blomgren v. City of Ottumwa, 209 Iowa 9, 227 N. W. 823, and other cases therein cited; Hedrick Nat. Bank v. Hawthorne, 209 Iowa 1013, 227 N. W. 403. This question was fully considered in the case of Hedrick Nat. Bank v. Hawthorne, 209 Iowa 1013, 227 N. W. 403, in which the authorities were exhaustively reviewed. It will answer no useful purpose to review them again. The assignments hereinabove referred to are too sweeping, vague, and general to present any question for our consideration.

There are several other errors assigned, but without intending to set them out in detail as errors assigned we conclude they raise the following questions:

1. Whether or not the court erred in overruling defendants' motion to set aside the verdict and grant a new trial because it erred in failing to sustain defendants' motion, made at the conclusion of plaintiff's evidence, to strike and withdraw from the jury certain

allegations of negligence contained in count II of the amendment to plaintiff's petition.

2. Whether or not there was sufficient evidence to warrant the jury in finding the defendant guilty of any of the allegations of negligence submitted to the jury.

3. Whether or not there was sufficient evidence to warrant the jury in finding that plaintiff was free from contributory negligence.

4. Whether or not the death of decedent was the result of an unavoidable accident.

5. That the verdict was excessive.

III. Appellants contend the court erred in overruling defendant's motion to set aside the verdict because it failed to strike from count II of plaintiff's amendment to its petition the allegation: "That at the time of and immediately preceding the striking of Lorimer, the said Sanders, one of the defendants herein, was operating defendant's car in a reckless, careless and negligent manner", because there was no evidence to support such allegations. There is no merit in this contention because, before the case was submitted to the jury plaintiff withdrew the issue pleaded in count II of said amendment.

IV. Appellants also contend there was not sufficient evidence to warrant the jury in finding the defendants guilty of any of the allegations of negligence submitted to the jury. The allegations of negligence submitted were as follows: (1) That he failed to have his car under control and reduce its speed to a reasonable and proper rate when approaching or crossing the intersection. (2) That he drove across the intersection and along Seventh street without keeping a proper lookout for pedestrians on the street. (3) That he drove at such a speed that he was not able to stop within the range of his vision. (4) That he drove without giving any signal or warning to deceased of his approach. (5) That he drove at a greater speed than would permit him to bring his car to a stop within the assured clear distance ahead.

From the statement of the facts hereinbefore set out it is apparent that there was testimony in the case from which the jury could reasonably find that one or more of the grounds of negligence submitted to the jury were established. Where there is any evidence tending to establish the negligence alleged it should be submitted to the jury. Hanson v. Manning, 213 Iowa 625, 239 N. W. 793.

The driver of the car testified he was going about 15 miles an hour but not any faster. Two other witnesses testified that he was

going over 15 miles an hour. A rate of speed exceeding 15 miles an hour in the business district of a city is contrary to law and constitutes negligence.

There is evidence in the record tending to show that defendant's driver crossed the intersection and ran into decedent without keeping a proper lookout for pedestrians on the street. Such action on the part of the driver of the car constitutes negligence. Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862; Robertson v. Carlgren, 211 Iowa 963, 234 N. W. 824; Holderman v. Witmer, 166 Iowa 406, 147 N. W. 926; Ege v. Born, 212 Iowa 1138, 236 N. W. 75.

The driver testified that by the light of his car he could see about 100 to 150 feet ahead of him. From the evidence offered the jury might be warranted in finding that, at the time the car struck decedent, he was in plain view of the car. There is no testimony by the driver of any lookout or care exercised by him at the time in question. If he had looked he could have seen the decedent in his path. If he did and was driving his car at such a rate of speed that he could not stop within the assured distance ahead, he was guilty of negligence. Lane v. Varlamos, 213 Iowa 795, 239 N. W. 689. There is evidence from which the jury could find that the driver of the car gave no signal or warning as he approached the intersection. Failure to give a signal under such circumstances is also negligence. Handlon v. Henshaw, 206 Iowa 771, 221 N. W. 489; Roberts v. Hennessey, 191 Iowa 86, 181 N. W. 798.

On a motion for a directed verdict the evidence should be considered in the light most favorable to appellee. Albright v. C., R. I. & P. Ry. Co., 200 Iowa 678, 205 N. W. 462; Middleton v. Omaha & C. B. St. R. Co., 209 Iowa 1278, 227 N. W. 915.

From the statement of facts hereinbefore set out, it is apparent that there was sufficient evidence from which the jury might find the defendant guilty of one or more of the charges of negligence submitted to the jury. For this reason we believe the defendant's negligence was properly submitted.

█ V. It is also contended that there was not sufficient evidence in the record to warrant the jury in finding that plaintiff was free from contributory negligence. The court fully charged the jury that the burden was on plaintiff to establish decedent's freedom from contributory negligence. Upon this branch of the case, the court instructed that in the absence of any evidence of eyewitnesses

as to decedent's conduct just before the accident, the law presumes he was exercising ordinary care.

The evidence in this case fails to show just where the decedent was when he was struck. The jury might infer from the evidence offered that he was crossing the street on the south intersecting line of Des Moines and Seventh streets. He was struck on Seventh street and after that was carried some distance. No one saw him struck and he was not observed until his body reached the top of the car after the impact; and after that it was carried some distance before it reached the ground. After the impact the body lay about 40 feet from the south line of Des Moines street. The driver admitted he was going 15 miles an hour at the time. Other witnesses testified he was going between 15 and 25 miles an hour. If the car was traveling 15 miles an hour, it would have traveled 22 feet in one second and 40 feet in less than two seconds. If it was traveling 25 miles an hour it would have traveled 36.6 feet in one second. It would therefore have taken less than two seconds to travel the 40 feet between the intersection and where the body lay at 15 miles per hour, and only about one second to travel the same distance at 25 miles an hour. The jury might easily find from the evidence that the car traveled 40 feet between the time he was struck and the time he rolled off the car.

It took some time after the impact to light on top of the hood, and some further time for the body to roll over off the left fender and reach the ground. In addition to this calculation, there is the further fact that when the decedent was last seen before the impact he was walking on the diagonal paved walk toward the northeast corner of the park. There were bushes between that sidewalk and the east side of the park; the course along the sidewalk was the shortest and easiest way to the corner. There is no evidence that he did not walk across Seventh street at the intersection on the south line of Des Moines street. From all the facts and circumstances in evidence and with the presumption of due care to which he was entitled in the absence of eyewitnesses, the jury might well find that at the time he was struck, the deceased was crossing Seventh street along its intersection with the south side of Des Moines street.

If the decedent was not walking along the intersection he still had a right to cross the street at any point. In doing so, however, he would be required to exercise ordinary care. Ordinary care under those circumstances would require greater vigilance than might be

required in crossing at the intersection, but it would still be ordinary care.

It is contended that the presumption of due care to which the decedent might be entitled in the absence of eyewitnesses was overcome by the physical facts in the case; that under such facts, the decedent could have seen the defendant's car approaching had he looked. He was also required to look south, but was not required to keep a constant lookout in both directions. If he had looked to the north and saw a car approaching at such a distance away that he might reasonably believe he could cross in safety, he would not be guilty of contributory negligence in attempting so to do.

It is the law of this state that where there is a period of time during which the conduct of the decedent was not observed by any eyewitness he is entitled to the benefit of the inference or presumption of due care, arising from the instinct of self-preservation on the part of the decedent. Gray v. C., R. I. & P. Ry., 160 Iowa 1, 139 N. W. 934; Lunde v. Cudahy Packing Co., 139 Iowa 695, 117 N. W. 1063; Anderson v. C., R. I. & P. Ry. Co., 189 Iowa 739, 175 N. W. 583.

The jury was instructed that a foot passenger has a right to cross a street at any point and is not restricted to the regular crossing. A pedestrian has the same right to use the street at one point as at another, although greater vigilance might be required of a pedestrian crossing at points other than at the intersection where people ordinarily cross. They were also instructed that if he failed to exercise such care as a man of ordinary care and prudence would have exercised in so crossing the street under the conditions and surroundings then existing, he would be guilty of contributory negligence. But that if he did so cross the street, and in doing so did exercise such care as a man of ordinary care and prudence would exercise at the same place and under the same conditions, he would not be guilty of contributory negligence. This instruction correctly states the rule of law with reference to the duties of pedestrians crossing a street.

The court also instructed the jury that, "Where there are no eyewitnesses as to the manner in which he was conducting himself at the time he received the injuries, the law presumes that he was exercising such care and caution as men of ordinary prudence, judgment and discretion exercise under like circumstances, and in relation to the same matters unless the facts and circumstances shown

upon the trial negative such presumption", and in this case the jury was instructed to indulge such presumption in decedent's favor unless they find from all the facts and circumstances that such presumption has been negatived or overcome.

No sufficient error was assigned to warrant the consideration of any complaint about this instruction because no ground of error was assigned thereon. A similar instruction was approved in Anderson v. C., R. I. & P. Ry. Co., 189 Iowa 745, 175 N. W. 583; Lunde v. Cudahy Packing Co., 139 Iowa 695, 117 N. W. 1063; Gray v. C., R. I. & P. Ry. Co., 160 Iowa 1, 139 N. W. 934.

The jury was instructed that the burden was upon the plaintiff to show freedom from contributory negligence and this burden was not removed by the instruction given in relation to the presumption of ordinary care in the absence of eyewitnesses. The plaintiff was entitled to the benefit of this presumption, on the part of the jury, when considering the question of plaintiff's freedom from contributory negligence. In the case of Anderson v. C., R. I. & P. Ry. Co., 189 Iowa 745, 175 N. W. 583, 585, we said:

"Ordinarily a presumption furnishes a resting place to the party otherwise having the burden of proof, and shifts upon the other party the burden of overcoming such presumption. We have held that the so-called presumption which obtains in the absence of eyewitnesses that a decedent exercised due care is a mere inference of fact, which is wholly for the consideration of the jury as an item of evidence; that the weight thereof is to be determined wholly by the jury in the light of all the evidence."

Under the facts and circumstances in this case, in connection with the presumption of due care in the absence of eyewitnesses, we believe the question of decedent's contributory negligence was properly submitted to the jury.

 VI. Appellants contend that the court erred in not sustaining their motion for a directed verdict because the evidence shows that the decedent met his death through an unavoidable accident. The jury was properly instructed that the mere fact that an accident happened, and the decedent was injured and killed, could not be considered by them, alone and of itself, as showing negligence on the part of the defendants, and that negligence on the part of the driver of the car must be shown by the evidence, aside from the mere fact of the happening of the accident or injury to the decedent.

They were instructed that if they believed from the evidence that the accident and injury to decedent was the result of a mere accident, and not the result of negligence, they would have to find for the defendants. This instruction was favorable to appellants and no exceptions were taken thereto. As disclosed by the preceding divisions of this opinion, the questions of negligence and contributory negligence were properly submitted to the jury. Therefore it would have been error on the part of the court to hold as a matter of law that the injury and death of decedent was due to an unavoidable accident.

VII. Appellants also contend that the verdict was excessive. The decedent was about 69 years of age and earning about $75 per month. His expectancy according to the life tables was 8.33 years. A verdict of $7,500 would be the equivalent of an allowance for his full earnings, for his entire expectancy. Such a verdict makes no allowance for the present worth of the award, nor for any loss of time or deduction for living expenses. Ordinarily a man's earning capacity at decedent's time of life decreases. There is some evidence in the record of other property belonging to the decedent; that he was laid off part of the time; that he had a farm and took care of the rents and of the home in town. There is no evidence, however, of the value of this real estate, or of any other accumulated property. The real estate might have been a liability instead of an asset. There is no other evidence of any other earning capacity. It is our opinion that the verdict rendered in this case is excessive. By that we do not mean to hold that a verdict of $7,500 for the death of a man 69 years of age is excessive in all cases. But in cases of this kind the verdict of a jury is limited to the evidence offered in each particular case showing the loss to decedent's estate. There might be cases in which the loss to an estate by the death of a man of decedent's age would exceed $7,500, but it would have to be supported by evidence introduced. That the verdict in this case is excessive, see Grace v. M. & St. L. R. Co., 153 Iowa 418, 133 N. W. 672; Cerny v. Secor, 211 Iowa 1232, 234 N. W. 193, 195; Noyes v. Des Moines Club, 186 Iowa 378, 170 N. W. 461, 463, 3 A. L. R. 605; Engvall v. Des Moines City Ry. Co., 145 Iowa 560, 121 N. W. 12.

We think an allowance of more than $4,000 for the loss to decedent's estate would be excessive, and the trial court erred in sustaining the allowance made by the jury. If the plaintiff shall accept a judgment of $4,000 with interest from date of original judgment, the case may stand affirmed. On refusal to accept a judg-

ment for that amount within 30 days after the final announcement of this opinion, this case will be reversed. If the plaintiff files such election in this court within that time an affirmance will be entered. On failure to make such election, the case will be reversed and remanded. Costs of the appeal are taxed to the appellant. The judgment of the trial court is therefore—Affirmed on condition.

KINDIG, C. J., and STEVENS, ANDERSON, and MITCHELL, JJ., concur.