MOEN (EDITH), Respondent, vs. MADISON RAILWAYS COMPANY, Appellant.

*April 2—May 1, 1934.*

For the appellant there was a brief by *Schubring, Ryan & Petersen,* and oral argument by *Mr. William Ryan* and *Mr. Ralph Axley,* all of Madison.

For the respondent there was a brief by *Darrell MacIntyre,* attorney, and *Lester C. Lee* and *Floyd W. McBurney* of counsel, all of Madison, and oral argument by *Mr. MacIntyre* and *Mr. Lee.*

FOWLER, J. This case has been twice before this court upon demurrer to the complaint. *Moen v. Madison Rys. Co.* 199 Wis. 168, 171, 225 N. W. 821; 208 Wis. 381, 388, 243 N. W. 503. In the former it was held that the complaint was insufficient for failure to state in connection with its other allegations that the motorman heard the warning gong sounded by the approaching fire-truck. In the latter it was held that an allegation of the complaint on information and belief that the "motorman heard the sounding of the gong" and failed to stop his car upon hearing it, together with its other allegations, stated a cause of action. The answer denied that the motorman heard the gong *before* reaching the intersection where he stopped. Upon the trial the only question submitted to the jury upon the issue thus raised was: "Question 1. Was there any negligence on the part of the motorman of the street-car, at and about the time and place of the accident, as to stopping his car?" In connection with this question the court charged the jury that "to find the . . . motorman negligent in not stopping before he did, you must be satisfied that . . . [he] heard the fire-truck's warning, or that he . . . committed or omitted some act because of which, if not committed or omitted, . . . [he] would in the exercise of ordinary care have discovered the approach of the fire-truck."

From this it appears that, under the pleadings and the question submitted, to make the motorman guilty of negligence for not stopping the street-car before he reached the intersection, he must have heard the gong of the fire-truck, or have done something, or omitted doing something, which prevented him from hearing it. There was no evidence whatever of any act or omission of the motorman that prevented his hearing the gong. Thus if in fact the motorman did not hear the gong he was not negligent.

The appellant claims that a verdict should have been directed in its favor upon its motion therefor upon the grounds that: (1) There was no evidence of negligence on the part of the motorman, and that (2) there was no evidence that not stopping the car before it was stopped proximately caused the collision.

(1) We find no evidence in the record to warrant the inference that the motorman heard any sound of the approaching fire-truck, or was in any way informed of its approach. He testified positively that he did not hear any sound of it and that he had no knowledge of its approach until he was stopping his car at the intersection. No one called his attention to its approach. There was no evidence of his seeing the truck or looking towards the rear or of any inattention to his business. Several persons in the car testified that they did not hear any warning of the approach of the fire-truck until the car was stopping. The plaintiff testified that she heard the gong of the truck before it reached the intersection, and that several other persons talked about it, one of whom stood beside her seat. But the latter testified that she did not hear the approaching truck until the street-car was stopping at the intersection. One witness standing in the back of the street-car looking towards the rear testified that he saw the truck approaching, and heard it after he saw it when it was half a block away, but he said nothing about it. There was testimony to show that the motorman had had

some temporary impairments of his hearing at times other than the time of the injury, but none that it was impaired at the particular time. In view of the fact that others in the street-car with normal hearing did not hear the approaching truck, the jury could not rightly find that he did hear it in the face of his denial and the absence of any evidence that he in fact did hear it.

(2) The theory of plaintiff was that if the street-car had stopped in the middle of the block there would have been room at its right for the fire-truck to pass it; that a Ford truck was following behind the street-car; that stopping at the intersection and opening the door for passengers to alight prevented the driver of the Ford truck from passing the street-car, and compelled him to bar the passage of the fire-truck at the right of the street-car; that the driver of the fire-truck was thus compelled to turn to the left of the street-car instead of the right as he had intended, which he was for some reason not able to do as readily as he could have turned to the right, and that the collision occurred as a consequence. The south rail of the car-track was fourteen feet from the curb. There was a ridge of ice between the rail and the curb and like ridges between the two car-tracks and between the left rail of the north track and the curb. Snow had been pushed to the sides of the car-tracks and piled two or three feet high for four or five feet from the curbs. The street was very slippery. The fire-truck skidded as the driver turned out and slid into the left corner of the street-car. The driver of the fire-truck was asked: "Had the street-car stopped . . . [between the street intersections] you could have gone by on the left, couldn't you?" The answer was "I don't know." He also said: "I don't know if the ruts or rails of the street-car prevented my turning to my left or right before I got to the intersection." "I don't know from observation whether I could have turned to the left or right." A hook-and-ladder truck was following the

chemical truck that collided with the street-car. The driver of this truck testified that while the Ford truck was following the street-car there was no chance, no room, for the chemical truck to pass to the right between it and the curb. This testimony is undisputed. We are unable to perceive how, if the drivers of the fire-trucks were unable to say that had the street-car stopped midway of the block the chemical truck would have passed the street-car without interference, the jury could find that it would. The conclusion of these witnesses would perhaps not have been receivable over objection, but it was elicited in part on examination by plaintiff's counsel and not objected to as far as it was elicited by defendant's counsel. And from the physical facts involved and the admitted trailing of the Ford truck we are unable to perceive reasonable basis for a finding of proximate cause.

Appellant's counsel also lay as ground for reversal misconduct of plaintiff's counsel in the trial of the case, consisting of ill-founded objections, continuous interjection of objectionable remarks, so improper that the trial court several times admonished him against their continuance, and finally threatened him with punishment for contempt if he did not cease. Whether a new trial would be ordered because of this misconduct we need not say. However, we feel that, aside from ethical considerations, we should at least say that an attorney who permits himself to indulge in such offensive tactics poorly serves his client and more often than not defeats his own ends.

*By the Court.*—The judgment of the circuit court is reversed, with instructions to dismiss the complaint.