# CHARLES J. STEINKE v. INDIANHEAD TRUCK LINE, INC., AND ANOTHER.
## ANTON STEINKE v. SAME.[1]

July 11, 1952.

No. 35,670.

[1]Reported in 54 N. W. (2d) 777.

254

 

*Streater & Murphy* and *Francis G. Thompson,* for appellants.

*Freeman, King, Larson & Peterson* and *Robert L. Hoppe,* for respondents.

MATSON, JUSTICE.

In each of two actions, one on behalf of Charles J. Steinke, a minor, for damages for personal injuries sustained when his bicycle collided with defendants' truck, and the other by plaintiff's father to recover medical and hospital expenses incurred in treating his son's injuries, plaintiffs appeal from orders denying their motions for a new trial after a directed verdict in each case for defendants.

This litigation arises out of a collision between a bicycle on which Charles J. Steinke, a 15-year-old minor, was riding and a gasoline transport truck leased by defendant Indianhead Truck Line, Inc., and owned and driven by defendant Joseph Riester as an employe of the truck line. The accident occurred about noon on Saturday, May 28, 1949, near the west limits of the city of Winona, Minnesota, on a triangular piece of ground formed by the junction of U. S. highways Nos. 14 and 61. Highway No. 14 runs straight west from Winona. In the western part of Winona, highway No. 61 coincides with highway No. 14, but near the city limits the former branches off in a northwesterly direction. A short distance westerly beyond the junction point, the two diverging highways are connected by a short, curved crossroad. As a result, the highways and the cross-road encompass a triangular plot of ground with its apex pointing to the east and with its south side extending 197½ feet along highway No. 14 and its north side extending along highway No. 61 for about 188¾ feet. The base of the triangle formed by the curved connecting road is about 75 feet across.

On the day of the accident, a sewer construction job—which had then been under way for two or three weeks—was being carried on at the junction. A large pile of dirt completely covered the concrete slab of highway No. 14 and extended about 10 feet into the triangle at a point near the southwest corner of the triangle. There was also machinery around the dirt pile. At the apex or east end of the triangle, a barricade facing east was in place part way across highway No. 14. It read: "Road Closed Detour." About 14 to 16 feet due north of this barricade on the triangle next to the south edge of highway No. 61 was a sign facing east which read: "U. S. Highway No. 14 Turn," and an arrow pointing to the north.

The triangle itself has a gravel surface. It had been used for many years as a temporary parking place for trucks when the drivers stopped to eat at the nearby eat shop located directly across highway No. 14. On the day of the accident, a tractor-trailer semi unit about 40 feet long and 8 feet wide was parked on the triangle parallel to highway No. 14 about 35 feet east of the west end or base of the triangle and 15 to 25 feet from the edge of highway No. 61. Defendant Riester was driving his gasoline semi unit fully loaded on highway No. 14 in a westerly direction. He was traveling about 20 miles per hour and admits that he saw the slow sign, several hundred feet east of the junction, the turn sign on the triangle, and the barricade across highway No. 14. He proceeded to the right of the turn sign and then turned left onto the gravel triangle. He was following some distance behind another truck which had just gone through the triangle. The path which Riester followed was well packed and defined and was much used during the construction operations, although one of plaintiffs' witnesses testified that it was not supposed to be used as a thoroughfare and that some cars which had entered had been turned back. Riester continued across the triangle at about 18 to 20 miles per hour, passing between the dirt pile and the parked semi unit along a line parallel to highway No. 14 and about six feet south of the parked semi unit. He then swung around the dirt pile and back

onto highway No. 14. Riester did not see plaintiff Charles Steinke at any time nor did he hear Charles collide with his truck.

Charles Steinke was 15 years old, in perfect health, and a good student in second year high school at the time of the accident. He lived in the vicinity where the accident occurred. During the preceding year, he had been employed in the summer and—during the school year—after school and on Saturdays and Sundays at the eat shop south of the triangle on highway No. 14. He began riding a bicycle at the age of five or six years and had a bicycle of his own at the age of nine. In short, he was an experienced bicycle rider who was thoroughly familiar with the area and its traffic conditions.

Immediately prior to the accident, Charles was riding his bicycle en route to work at the eat shop at a speed of five or six miles per hour. His selected route of travel led in a southeasterly direction across the triangle. When he approached the area, he rode southeasterly on the shoulder of highway No. 61 until he reached the connecting road, which forms an arc and is the base of the triangle. He then cut across the connecting road, and when about halfway across he looked and saw defendants' oil truck approaching at an undetermined distance east of the junction. Charles, without taking further observation of the truck, proceeded across the connecting road and entered the triangle at a point on its base line approximately 15 or 20 feet from its northwesterly corner. He then followed a route across the triangle which took him to a point about 8 or 10 feet west of the parked semi unit. The parked semi unit obscured his vision to the east. From the time when Charles first saw defendants' truck east of the junction, *he did not look for or again see it until he emerged from behind the parked semi unit* and saw the truck at a distance of only about 25 feet away. Although he traveled forward 8 or 10 feet before colliding with the truck, Charles testified that he did not have time to stop or turn, although he attempted to do both. There is some dispute as to the place on the truck where he came in contact with it. A broken clearance light and fresh scratches would indicate that the point was somewhere near the middle of the trailer part. Taking, as we must, the view of the evidence most favorable to plaintiffs, Charles's

testimony that he struck the tractor part of defendants' vehicle in the front half must be accepted.

At the close of all the evidence the trial court granted defendants' motion for a directed verdict. Assuming—but without so deciding—that defendants' negligence presented an issue for the jury, we pass directly to the question whether 15-year-old Charles was guilty of contributory negligence as a matter of law.

■ Under the circumstances, it is of no significance whether the area of the triangle is or is not considered a part of the highway. In any event, a well-defined and frequently used traffic route existed across the triangle. It may be assumed that a bicycle rider had as much right to use the area for travel as a motor vehicle driver and vice versa.[2] In passing on the issue of contributory negligence as a matter of law with respect to a minor, we recognize that a 15-year-old boy is obliged to use only that degree of care which an ordinarily prudent boy of that age, intelligence, and experience can reasonably be expected to exercise *under the same or similar circumstances*.[3]

■ It is of no little significance that Charles was a bright and experienced bicycle rider who was thoroughly familiar with the entire area where the accident occurred—with the traffic conditions and the construction operations. He had worked almost daily for a year at the nearby eat shop. He reasonably knew that truck drivers frequently drove across the triangle when they stopped, as they often did, to eat in the very place where he worked. He reasonably knew, or reasonably ought to have known, that during the sewer construction operations, trucks and other vehicles used the well-defined path across the triangle. A short time prior to entering the triangle, he looked both ways and saw defendants' truck approaching at some distance east of the highway junction. Although he could not then possibly know from this one observation

[2] As to unusual traffic movements not specifically authorized by the state highway traffic regulation act, see Carlson v. Peterson, 205 Minn. 20, 284 N. W. 847.

[3] Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1.

whether defendants' truck would follow highway No. 61 or would go across the triangle to continue on highway No. 14, he did not again look, but blindly proceeded on his way (without reducing his speed sufficiently to enable him to stop quickly, or to turn to one side if the need should arise) into a zone of danger, where his vision was obscured by the parked semi unit. He took no precaution to discover, or to safeguard himself (by slowing down sufficiently so that he could stop quickly) from the traffic hazards which were concealed from his view by a parked vehicle 8 feet wide and 40 feet long. Our attention has been directed to Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1, wherein we applied the rule that due care in keeping a lookout for other approaching vehicles is not to be determined by the number of times the operator of a bicycle or other vehicle looked or by how often, or when, or from where. This principle is correct, but it is obviously subject to the elementary and common-sense qualification that in entering a zone of danger where the vision is obscured the operator of a bicycle or other vehicle, in the exercise of ordinary care, is not permitted to rely upon an observation *made so long prior to entering the zone of danger as to be wholly ineffectual.*[4] It is the latter situation which confronts us here. The only observation made by Charles before he darted from behind the truck so far antedated his entry of the danger zone that he was in no position to know which route would be taken by defendants' vehicle. His conduct, therefore, amounted to his not having looked at all or, in effect, to his being wholly indifferent to hazards concealed from his view. A jury question on the issue of the contributory negligence of a minor does not arise in the case of a bright, healthy, and experienced 15-year-old bicycle rider who, by daily travel and observation for a substantial period of time, is thoroughly familiar with the area of the accident, and who, relying solely upon a prior observation which so far antedates his entry into a danger zone as to be wholly ineffectual in warning him of approaching vehicles, darts blindly (without reducing his speed sufficiently to prepare for a quick

[4] See, 2A Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 1474.

stop) from behind a parked vehicle—which obscures his view—into the path of, or against, a passing truck.

Charles was guilty of contributory negligence as a matter of law, and the orders of the trial court denying plaintiffs' motions for a new trial after the direction of verdicts for defendants must be affirmed. It becomes unnecessary, therefore, to discuss the evidence relating to defendants' negligence. Even though it should be determined that they were negligent, contributory negligence bars all recovery. Equitable and desirable as it may be to apportion damages where both plaintiff and defendant are negligent, the rule is otherwise in this jurisdiction, and any change of that rule is not to be effected by judicial erosion but by legislative action.

The orders of the trial court are affirmed in both actions.

Affirmed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I cannot agree with the majority that under the unusual facts and circumstances here we can say that Charles was guilty of negligence as a matter of law. Rather, it appears to me that the questions of negligence and contributory negligence were for the jury. Here, we are dealing with the question of the contributory negligence of a 15-year-old boy, who, after all, was obliged to use only that degree of care which an ordinarily prudent boy of that age, intelligence, and experience could reasonably be expected to use under the same or similar circumstances. It is true that he appears to have been a boy of fine health and a good student, but what were the peculiar circumstances which might have confused a boy of that age? The sewer construction job was in progress at the junction of the highways. A large pile of dirt completely covered the concrete slab on highway No. 14 and extended onto the triangle, and there was also machinery around the pile of dirt. At the east end of the triangle, there was a barricade on part of highway No. 14 with a notice "Road Closed Detour." Farther north from the barricade on the triangle next to the south edge of highway No. 61 was another sign which read: "U. S. Highway No. 14 Turn," with an

arrow pointing north. Both of these signs faced east to warn or notify drivers coming from that direction of the situation.

Charles said that he first saw the approaching oil truck, with which he later collided, coming from the east. He did not know just how far east of the junction it then was. He next saw it shortly before he came in contact with it when it was too late. The majority opinion states that the boy reasonably knew that truck drivers frequently drove across the triangle, but I can find nothing in the record to show that he knew that trucks were driving across the triangle. It is true he testified that he was familiar with a spot in front of the triangle where truckers parked their vehicles. He also said that he did not think he "saw them while they were working there so much; there were usually a few, yes." The majority opinion also states that he reasonably knew, or reasonably ought to have known, that during the sewer construction operations trucks and other vehicles used the well-defined path across the triangle. However, it appears to me that he partially offset this statement when he testified that, while he knew that highway No. 14 was an arterial highway, "it was not supposed to be used now." It seems to me that it might equally be assumed that under the circumstances here a 15-year-old boy might also have considered, when he first observed the oncoming truck east of the triangle, that the driver would follow the marked detour rather than swing onto the temporary road across the triangle and still maintain a speed of 20 miles per hour. For these reasons, it is my opinion that the alleged contributory negligence of Charles was a fact question for the jury to determine.