E. RUTH MARKLE AND ANOTHER v. CLARENCE A. HAASE.[1]

November 25, 1955.

Nos. 36,576, 36,577.

[1]Reported in 73 N. W. (2d) 362.

*George, Brehmer & McMahon* and *J. Russell Smith,* for appellants.
*Francis G. Thompson* and *Harold S. Streater,* for respondent.

MURPHY, JUSTICE.

These are companion cases for personal injuries and property damage by plaintiff, E. Ruth Markle, and for medical expenses and

loss of consortium by her husband, William M. Markle, arising from a collision between Mrs. Markle's automobile and a fire truck driven by defendant, Clarence A. Haase. A collateral action for property damage by the owners of the fire truck, the Board of Fire and Police Commissioners of the city of Winona, Minnesota, against E. Ruth Markle, consolidated with the above actions for trial, was withdrawn from the consideration of the jury at the conclusion of the evidence. The actions resulted in verdicts for defendant. Plaintiffs appeal from the order denying their motion for a new trial.

Considering the evidence in the light most favorable to the verdict, the following facts appear:

On April 25, 1953, at about 5:45 p. m., the defendant, Clarence A. Haase, driving a hook-and-ladder truck in answer to an emergency fire call collided with an automobile driven by plaintiff, E. Ruth Markle, at the intersection of Broadway and Huff Streets in Winona, Minnesota.

Huff Street runs in a generally north-south direction and Broadway, running generally east-west, intersects it at right angles. Both streets are paved arterial highways and the intersection, one of the most heavily traveled in Winona, is protected by automatic semaphore signals.

Mrs. Markle entered her car one block north of Broadway and east of Huff. At that time she heard sirens from two pieces of fire equipment that preceded the defendant's hook and ladder and saw the two vehicles traveling westerly on Broadway. She drove one block west, proceeded down Huff Street, and entered the intersection with Broadway at about 18 to 20 miles per hour, the green light being in her favor. There was a conflict in the evidence as to whether Mrs. Markle looked down Broadway before entering the intersection.

The defendant was alone in the cab of the hook and ladder traveling west on Broadway at approximately 22 to 25 miles per hour. The flashing red Mars light was operating and the siren was being intermittently actuated by defendant with a foot button.

The siren apparently was sounding and was audible at the time of the collision. Three witnesses, all members of one family, observ-

ing from inside their house located on Broadway somewhat over 200 feet east of Huff, testified that they heard the siren east of their house but not after the truck had passed west toward the intersection. Witnesses, one located in a car one block east of the intersection, and one out of doors one and three-quarters blocks east, testified that the siren sounded until the time of the accident. A third witness in an automobile one block south heard a siren until the time of the accident, and the tiller man on the rear of the hook and ladder testified that the siren was operating continuously prior to the collision.

On the other hand, the driver of a car crossing the intersection from south to north and both occupants of a north-headed car waiting at the intersection to make a left turn testified that they heard no siren. Two occupants in a car preceding Mrs. Markle into the intersection heard the siren when the truck was a block east of Huff street but not thereafter. The driver of the car immediately preceding Mrs. Markle into the intersection heard no siren nor did Mrs. Markle.

■ M. S. A. 169.03, 169.17, and 169.20 include the rights and duties of the driver of an emergency vehicle while responding to an emergency call as they are applicable here. Construed together as they must be, Travis v. Collett, 218 Minn. 592, 17 N. W. (2d) 68, and Hogle v. City of Minneapolis, 193 Minn. 326, 258 N. W. 721, these sections exempt him from the speed and right-of-way requirements if he sounds an audible signal by siren and, when approaching a stop sign, slows down as necessary and proceeds with caution. They specifically do not relieve him of the duty to drive with due regard for the safety of other persons using the highway nor do they protect him from the consequences of a reckless disregard of this duty.

■ Since there was testimony that people actually in the intersection did not hear the siren, the plaintiffs contend the defendant was negligent as a matter of law for failing to warn of his approach. It is true, of course, that it is only while sounding an audible signal that an emergency vehicle may violate the rules of the road.[2]

[2]According to § 169.68, this would be a sound emitted by siren audible under normal conditions from a distance of not less than 500 feet.

Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Hogle v. City of Minneapolis, *supra*. But defendant testified that he was operating the siren, and four witnesses located at various points up to 500 feet from the intersection testified that the siren was sounding until the time of the collision. There was no evidence that the siren was inefficient nor was there evidence of abnormal conditions that would prevent its being heard. Notwithstanding the failure of all witnesses in the intersection to hear the siren for at least the last 300 feet, the question of whether or not the defendant sounded an audible signal was properly left to the jury. Cf. Hogle v. City of Minneapolis, 193 Minn. 326, 258 N. W. 721.

■ Similarly, we are unable to agree with plaintiffs that, as a matter of law, the defendant entered the intersection at a negligent rate of speed. Section 169.03 does not impose an absolute duty to slow down but only to slow down as the circumstances require and to proceed with caution, i.e., to exercise due care to avoid a collision. Travis v. Collett, 218 Minn. 592, 17 N. W. (2d) 68; Rogers v. Minneapolis St. Ry. Co. 218 Minn. 454, 16 N. W. (2d) 516.

The defendant coasted in gear the entire block preceding the intersection, reducing his speed about three miles per hour. Although other cars had been crossing the intersection, Mrs. Markle apparently paused before accelerating into the path of the truck, an act which could have misled the defendant to believe that she was going to yield the right of way. Thus there was evidence from which the jury could have concluded that the defendant slowed sufficiently and exercised due care under the circumstances.

■ Moving to the question of contributory negligence, plaintiffs predicate error on the court's refusal to instruct:

"If you find from the evidence that Mrs. Markle did not hear the siren of the approaching fire truck and in the exercise of ordinary care did not do anything or fail to do anything which would prevent her from hearing it, you must find that Mrs. Markle was not guilty of negligence."

While there is support for this proposition,[3] it seems patently deficient in omitting the duty to maintain a proper lookout. There is some conflict in Mrs. Markle's testimony relative to looking before entering the intersection, but the jury would have been justified in concluding that, had she looked, she would have seen the truck with its flashing red light in time to stop. A person cannot rely on an observation made so long prior to entering the zone of danger as to be wholly ineffectual,[4] nor has he an absolute right to rely solely on a traffic signal.[5]

■ Plaintiffs also requested, and were refused, the instruction that:

"Before you can find Mrs. Markle negligent you must be satisfied from the evidence that she heard the fire truck's siren or that she committed or omitted some act which, if not committed or omitted, would in the exercise of ordinary care have discovered the approach of the fire truck."

Including, as this does at least by implication, the duty to keep a proper lookout, it is probably correct insofar as it would have required the jury to find that, if Mrs. Markle was exercising care to

[3]See, e.g., Balthasar v. Pacific Elec. Ry. Co. 187 Cal. 302, 202 P. 37, 19 A. L. R. 1044; Moen v. Madison Rys. Co. 215 Wis. 248, 254 N. W. 641; Swinkels v. Wisconsin Michigan Power Co. 221 Wis. 280, 267 N. W. 1. The weight of authority, however, is to the effect that a person has a duty to listen for audible signals and may be negligent for failing to hear that which could have been heard. Engvall v. Des Moines City Ry. Co. 145 Iowa 560, 121 N. W. 12; Calvert Fire Ins. Co. v. Hall Funeral Home (La. App.) 68 So. (2d) 626; Holser v. City of Midland, 330 Mich. 581, 48 N. W. (2d) 208. In Indianapolis Traction & Terminal Co. v. Beck, 57 Ind. App. 527, 108 N. E. 153, the court said it would be improper to instruct the jury that before the defendant could be found negligent it would have to find he actually heard the signal. See, also, Annotations, 21 A. L. R. 978, 47 A. L. R. 601, and 164 A. L. R. 34.

[4]Steinke v. Indianhead Truck Line, Inc. 237 Minn. 253, 54 N. W. (2d) 777.

[5]Cf. Muggenburg v. Leighton, 241 Minn. 498, 63 N. W. (2d) 533; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Fickling v. Nassif, 208 Minn. 538, 294 N. W. 848.

discover the approach of the fire truck, she was entitled to notice thereof. See footnote 3, *supra*. The court, however, did instruct that:

"* * * every driver * * * must use his faculties, keep a reasonable lookout as to traffic conditions * * * taking into consideration the situation and conditions under which he is proceeding. He is required to use such care in these respects as persons of ordinary prudence usually exercise under similar circumstances.

\* \* \* \* \*

"* * * the driver of every emergency vehicle * * * shall sound the siren when necessary to warn pedestrians and other drivers of the approach thereof.

\* \* \* \* \*

"* * * upon the immediate approach of an authorized emergency vehicle * * * exhibiting a red light, * * * and when the driver is giving an audible signal by siren, the driver of each other vehicle shall yield the right of way * * *.

\* \* \* \* \*

"An audible signal by siren is one that is capable of being heard for a distance of not less than 500 feet under normal conditions.

"Mrs. Markle and Mr. Haase each had a right to assume, until he or she saw or should have seen otherwise, that the other driver would obey the traffic laws."

Thus the court instructed that the defendant was required to warn Mrs. Markle by sounding his siren and that Mrs. Markle was required to yield the right of way to an emergency vehicle exhibiting a red light and sounding an audible signal by siren. It is axiomatic that a light is not exhibited unless it is seen nor a siren audibly sounded unless it is heard by normal people in a position to see and hear—assuming, as is indicated by the trial court's lookout instruction, that such people are using their faculties with reasonable care to see and hear. Certainly implicit in the court's use of the word "warning" is the concept of receipt of notice by the party warned. The charge, therefore, was not only technically correct but also was

so worded as to leave the jury with the correct overall impression,[6] i.e., that, if Mrs. Markle was using her faculties and exercising reasonable care to discover the defendant's truck, she was entitled to notice of the approach thereof.

Since it appears that the point plaintiffs sought was covered in the general charge, to which plaintiffs took no exception other than is hereinafter stated, it would have been superfluous for the court to repeat the point as rephrased in the requested instruction. It is better for the trial court, after due consideration of the requested instructions, to charge the jury in an orderly, systematic, and consecutive manner in a general charge upon the whole law of the case than to run the risk of confusing the jury or overemphasizing one side of the case by giving instructions submitted by counsel. A refusal to give a requested instruction is not, therefore, ground for a new trial if the general charge has adequately covered the substance of the request. Devall v. Standard Oil Co. 239 Minn. 87, 57 N. W. (2d) 835; Swanson v. LaFontaine, 238 Minn. 460, 57 N. W. (2d) 262; 6 Dunnell, Dig. & Supp. §§ 9777, 9778.

■ Finally, plaintiffs contend that the court allowed the jury to find a fact not in issue and on which there was no evidence when it instructed:

"There is no evidence that [the] siren was inefficient, but even if it was, negligence, if any, on the part of the Board of Fire and Police Commissioners, in selection of equipment, is not to be imputed to the defendant Haase."

Since the Board of Fire and Police Commissioners had been a party in a collateral case against Mrs. Markle, there was considerable testimony relating to the number of men on the truck, the type of siren, its location, and its replacement after the accident. The board's case was withdrawn at the conclusion of the testimony and the court instructed the jury to give it no further consideration. The instruction complained of, which appears to be an attempt to further confine the issue to the defendant's direct negligence, was probably

---

[6]See, Hagen v. Snow, 244 Minn. 101, 106, 69 N. W. (2d) 100, 103; Zurko v. Gilquist, 241 Minn. 1, 5, 62 N. W. (2d) 351, 354.

unnecessary and, standing alone, might have misled the jury to conclude, as plaintiffs contend, that, if the siren was not heard because of its placement, or not sounded because of a shortage of personnel to operate it, the defendant could be exonerated. But considering the charge as a whole, 6 Dunnell, Dig. & Supp. § 9781, the jury was fully instructed that Minnesota statutes required the defendant to sound an audible siren before violating the red light and that he would be prima facie negligent in operating contrary to the rules of the road without such audible signal. Certainly the trial court in this cautionary instruction did not, as in the cases on which plaintiffs rely,[7] instruct the jury that, if it found certain facts upon which there was no evidence, it could base its holding thereon.

The order appealed from is affirmed.

[7]Lufkin v. Harvey, 131 Minn. 238, 154 N. W. 1097, L. R. A. 1916B, 1111; Rugland v. Tollefsen, 53 Minn. 267, 55 N. W. 123.